**Stephen Kaus** (admitted *pro hac vice*)
skaus@cwclaw.com
**Merrit Jones** (admitted *pro hac vice*)
mjones@cwclaw.com
COOPER, WHITE & COOPER LLP
201 California Street, 17th Floor
San Francisco, California 94111
Telephone: 415.433.1900
Facsimile: 415.433.5530

**Christopher E. Hawk OSB 061635**
chawk@gordonrees.com
Gordon & Rees LLP
601 SW 2nd Avenue, Suite 2300
Portland, Oregon 97204
Telephone: 503.222.1075
Facsimile: 503.907.6636

Attorneys for Defendant QUANTUM
FUTURE GROUP, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| HIGHER BALANCE, LLC, an Oregon Limited Liability Company, dba the HIGHER BALANCE INSTITUTE,<br><br>Plaintiff,<br><br>vs.<br><br>QUANTUM FUTURE GROUP, INC., a California corporation, QUANTUM FUTURE SCHOOL, SIGNS OF THE TIMES, and LAURA KNIGHT-JADCZYK,<br><br>Defendants. | CASE NO. 3:08-cv-233 - HA<br><br>**Defendant Quantum Future Group, Inc.'s MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**<br><br>**Pursuant to O.R.S. §§ 31.150 - 31.155**<br><br>**(Request for Oral Argument)** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION. ...................................................................................................1

II.  SUMMARY OF ARGUMENT. ...........................................................................2

III. STATEMENT OF FACTS. ....................................................................................3

   A.   Eric Pepin and HBI. ...................................................................................3

   B.   Defendants. .................................................................................................4

   C.   The Allegedly Libelous Posts. ...................................................................5

      1.   HBI is a "front for pedophilia" and a "cointelpro" organization. ...............6

      2.   HBI is "conning" the public, and meditation, as sold by HBI, is an act of "falling into confluence with a psychopathic reality". .....................8

      3.   Those associated with HBI must be careful to avoid sexual molestation by HBI members. ...................................................................8

      4.   "Fishy" sexual conduct is occurring at HBI. ..............................................8

      5.   HBI "leads people more deeply into sleep". ...............................................9

IV. THE ANTI-SLAPP STATUTE APPLIES. ..........................................................9

   A.   HBI's Claims Arise From Defendant's Statements Made in a Public Forum in Connection With an Issue of Public Interest. .........................10

      1.   The SOTT.net Forum Page Constitutes a Public Forum. ..........................10

      2.   The Merits of HBI's Meditation Teachings and the Sex Abuse Charges Against Pepin are Issues of Public Interest. .................................11

V.  SECTION 230 OF THE CDA IMMUNIZES DEFENDANTS FOR THIRD PARTY POSTS. .........................................................................................13

VI. THE FIRST AMENDMENT PROTECTS THE SPEECH AT ISSUE; THEREFORE, HBI CANNOT SHOW THAT IT WILL PREVAIL. ...............16

   A.   All of the Allegedly Libelous Posts Express Constitutionally Protected Opinion, Rather Than Verifiable Assertions of Fact. ...........................16

      1.   The broad context, general tenor, and subject matter of the posts

make clear that they express points of view. ...........................................17

    2.    The specific content of the posts negates any impression that they assert provable facts. ...................................................................18

        a.    The posts constitute surmise and conjecture based on facts disclosed in The Oregonian news articles. .....................................19

        b.    The posts are full of colorful, figurative hyperbole. .......................20

    3.    The posts at issue are not susceptible of being proved true or false. .........24

B.    HBI's Defamation Claim Must be Stricken, Because It Cannot Meet Its Evidentiary Burden To Show That the Statements Are False. ...............................25

C.    HBI's Defamation Claim Must be Stricken, Because It Cannot Meet its Evidentiary Burden to Show Actual Malice. .........................................26

    1.    HBI and Pepin are Both Public Figures, and The Complaint Seeks Punitive Damages. ...................................................................26

    2.    HBI Cannot Prove That  Defendants Entertained Serious Doubts As To The Truth of the Statements. ............................................28

D.    Many of the Allegedly Libelous Posts are Not Even Capable of Defamatory Meaning. ............................................................................28

VII.    THE FIRST AMENDMENT APPLIES TO HBI'S OTHER CLAIMS ............................29

A.    HBI's False Light Claim is Based on the Same Posts as Its Defamation Claim, and Fails for the Same Reasons. ................................................30

B.    HBI's Intentional Interference Claims are Based on the Same Posts, and Fail for the Same Reasons. ...................................................................31

VIII.    DEFENDANTS ARE ENTITLED TO RECOVER FEES INCURRED IN BRINGING THIS MOTION. ..........................................................................31

IX.    CONCLUSION. ..........................................................................32

Defendant Quantum Future Group. Inc.'s
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT

# TABLE OF AUTHORITIES

<u>**Page**</u>

## CASES

*Allen v. Hall,* 328 Or. 276, 281, 974 P.2d 199, 202 (1999) ........................................................ 31

*Andreason v. Guard Publishing Co.,* 260 Or. 308, 310-11, 489 P.2d 944 (1971)........................ 29

*Bahr v. Statesman Journal Co.,* 51 Or. App. 177, 180, 624 P.2d 664 (1981) .............................. 25

*Bank of Oregon v. Independent News, Inc.,* 298 Or. 434, 693 P.2d 35 (1985)............................. 27

*Barnes v. Yahoo,* 2005 WL 3005602, *4 (D.Or, 2005) ................................................................ 15

*Barrett v. Rosenthal,* 40 Cal.4th 33, 59, 146 P.3d 510, 527 (Cal 2006) ...................................... 15

*Batzel v. Smith,* 333 F.3d 1018, 1032-1035 (9th Cir. 2003) ................................................. 14, 15

*Ben Ezra, Weinstein, and Company v. America Online Inc.,* 206 F.3d 980, 985-986 (10th Cir. 2000) ...................................................................................................................... 15

*Carafano v. Metrosplash.com, Inc.,* 339 F. 3d 1119, 1123 (9th Cir. 2003)............................ 14, 15

*Card v. Pipes,* 398 F. Supp. 2d 1126, 1137 (D.Or. 2004) ...................................................... 10, 11

*Church of Scientology of Cal. v. Wollersheim,* 42 Cal.App.4th 628, 650, 49 Cal.Rptr.2d 620 (1996)................................................................................................................................ 12

*ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993, 1006, 113 Cal.Rptr.2d 625 (Cal.App. 2001) ........................................................................................... 10, 11, 16, 18

*Cort v. St. Paul Fire & Marine Ins. Cos., Inc.,* 311 F.3d 979, 987 (9th Cir.2002)........................ 30

*Dean v. Guard Publishing Co., Inc.,* 73 Or.App. 656, 659, 699 P.2d 1158 (1985)....................... 30

*Dodds v. American Broadcasting Co.,* 145 F.3d. 1053, 1061 (9th Cir. 1998) .............................. 26

*Dodds v. American Broadcasting Co., Inc.,* 145 F.3d 1053, 1063-1064 (9th Cir. 1990).............. 29

*DuBoff v. Playboy Enterprises International, Inc.,* 2007 WL 1876513, *7-8 (D.Or. June 26, 2007, Slip Copy) ................................................................................................. 11, 23

*DuPont Merck Pharmaceutical Co. v. Superior Court,* 78 Cal. App. 4th 562, 567, 92 Cal.Rptr.2d 755, 759 (Cal.App.2000)............................................................................ 12

Fodor v. Leeman, 179 Or.App. 697, 701, 41 P.3d 446 (Or.App. 2002) ................................. 25, 26

*Gardner v. Martino,* 2005 WL 3465349 (D.Or. Sept. 19, 2005)........................................... 12, 16

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 344-45 (1974)................................................... 26, 28

*Gilbrook v. City of Westminster,* 177 F.3d 839, 861 (9th Cir. 1999)............................................. 22

*Global Telemedia International, Inc. v. Doe,* 132 F.Supp.2d 1261, 1264 (C.D. Cal. 2001)11, 18, 19, 21

*Greenbelt Coop. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970)......... 21

*Hardie v. Legacy Health System,* 167 Or.App. 425, 432, 6 P.3d 531, 536 (2000)....................... 29

*Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678,
105 L.Ed.2d 562 (1989)............................................................................................... 26, 28

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 53-55, 108 S.Ct. 876 (1988).............................. 17

*Hutchinson v. Proxmire,* 443 U.S. 111 (1979) ............................................................................. 27

*IC Marketing, Inc. v. The Taunton Press, Inc.,* 2005 WL 503180 (D.Or. March 3, 2005) .......... 24

*Knieval v. ESPN,* 393 F.3d 1068, 1075 (9th Cir.2005)................................................................. 17

*Koch v. Goldway,* 817 F.2d 507, 509 (9th Cir.1987).................................................................... 17

*Kurdock v. Electro Scientific Indus ., Inc.,* Mult. Co. Case No. 0406-05889, Order at
pp.1-2 (Oct. 15, 2004).................................................................................................... 11

*Lewis v. Time, Inc.,* 710 F.2d 549, 554 (9th Cir.1983) ................................................................. 23

*Marczeski v. Law,* 122 F.Supp.2d 315, 327 (D. Conn. 2000)....................................................... 14

*Masson v. New Yorker Magazine,* 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447
(1991)............................................................................................................................. 25

*McNabb v. Oregonian Publishing Co.,* 69 Or.App. 136, 143, 685 P.2d 458 (1984).................... 31

*Melaleuca, Inc. v. Clark,* 66 Cal. App. 4th 1344, 1363, 78 Cal.Rptr.2d 627, 638
(Cal.App.1998) .............................................................................................................. 12

*Metabolife Int'l, Inc. v. Wornick,* 264 F. 3d 832, 837 n. 7 (9th Cir. 2001) ....................................... 9

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed. 2d 1
(1990)................................................................................................................... 16, 20, 25

*New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct 710, 11 L. Ed 2d 686 (1964)..... 16, 20, 25, 26

*Newton v. National Broadcasting Co., Inc.,* 930 F.2d 662, 681 (9th Cir. 1990) ........................... 29

*Norse v. Henry Holt & Co.,* 991 F.2d 563, 567 (9th Cir.1993) .................................................... 28

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264,
284, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)...................................................................... 21

*Partington v. Bugliosi,* 56 F.3d 1147, 1159 (9th Cir. 1995)................................................... passim

*Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d
783 (1986)....................................................................................................................... 25

*Pippert v. Niece,* 518 F.Supp.2d 1265, 1273 (2007)......................................................... 29

Rattray v. City of National City, 51 F.3d 793, 801-802 (9th Cir. 1994) ...................................... 25

*Reesman v. Highfill,* 327 Or. 597, 603, 965 P.2d 1030, 1034 (1998)................................ 28, 29, 30

*Simpson v. Burrows,* 90 F.Supp.2d 1108, 1126 (D.Or. 2000) .................................................. 17, 20

*Thale v. Business Journal Publ'ns,* Mult. Co. Case No. 0402-02160, Order at p. 1 (May
    20, 2004) ................................................................................................................ 11

*Thomas v. Fry's Electronics, Inc.,* 400 F. 3d 1206, 1206-07 (9th Cir. 2005) ............................... 10

*Time, Inc. v. Hill,* 385 U.S. 374, 387-88, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) .......................... 30

*Troy Group, Inc. v. Tilson,* 364 F.Supp.2d 1149, 1159 (C.D. Cal. 2005) .............................. 19, 22

*Underwager v. Channel 9 Australia,* 69 F.3d 361, 366 (9th Cir.1995) ................................. passim

*Unelko Corp. v. Rooney,* 912 F.2d 1049, 1053 (9th Cir.1990)................................................. 17, 31

*Universal Communications Systems, Inc. v. Lycos, Inc.,* 478 F.3d 413, 418-421 (1st Cir.
    2007) ...................................................................................................................... 14

*Walleri v. The Federal Home Loan Bank,* 83 F.3d 1575, 1583 (9th Cir .1996)........................... 29

*Wheeler v. Green,* 286 Or. 99, 114, 593 P.2d 777, 787 (1979) .................................................... 28

*Wilbanks v. Wolk,* 17 Cal. App. 4th 883, 898-899, 17 Cal. Rptr.3d 497, 506-07 (Cal.
    App.2004) ................................................................................................................ 12

*Zeran v. America Online. Inc.,* 129 F.3d 327, 330 (4th Cir. 1997)............................................. 13

## STATUTES

47 U.S.C. Section 230......................................................................................... passim

O.R.S. § 31.150(2)(c) and (3) .................................................................. 3, 10, 13, 31

O.R.S. §§ 31.150-31.155 ..................................................................................... 9

## OTHER AUTHORITIES

Sack on Defamation, Section 4.2.4, page 4-14 .......................................................... 20

599111.3                                        v

Defendant Quantum Future Group. Inc.'s
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT

# I.
## INTRODUCTION.

This case seeking $4.47 million in damages, plus punitive damages, is an attempt to intimidate and silence critics of a metaphysical meditation guru, previously charged with multiple counts of child sex abuse, and his Internet sales and promotion company. As such, it presents a classic example of free speech that is protected by Oregon's anti-SLAPP statute and the First Amendment to the U.S. Constitution.

Eric Pepin is the "founder and creator" of plaintiff Higher Balance Institute, LLC ("HBI"). Declaration of Merrit M. Jones ("Jones Decl."), Ex. A. Pepin promotes himself on the Internet as an "'enlightened master'" and promises spiritual awakening and development of a sixth sense through meditation books and CDs and the ingestion of his psychic pills. Jones Decl., Ex. C-F.

In July 2006, Pepin and another HBI employee were arrested on charges that they had sex with an underage boy, who was 17 and working for Pepin at the time of the alleged abuse. Declaration of Laura Knight-Jadczyk ("Knight-Jadczyk Decl."), Ex. A. Pepin was charged with one count of using a child in a display of sexually explicit conduct, two counts of second-degree sexual abuse, and four counts of third-degree sexual abuse. *Id.* The other HBI employee was charged with one count each of using a child in a sexual display and third-degree sexual abuse. *Id.*

Although both men were acquitted, according to an article in The Oregonian, the judge stated it was "probable that the conduct alleged in all counts occurred," but that he wasn't convinced beyond a reasonable doubt. *Id.* "There's a lack of strong corroboration," such as a date-stamp on a videotape of the sexual encounter, the judge said, according to the newspaper report. *Id.* Following the acquittal, Pepin issued a press release

SOTT.net is a website with a forum on various topics, including New Age activities. Knight-Jadczyk Decl., ¶ 5. In May 2006, a user named "wilecoyote" joined a forum at SOTT.net and began a discussion of Pepin and HBI. Knight-Jadczyk Decl., ¶ 11, Ex. A. There was

considerable participation by both supporters and detractors. Knight-Jadczyk Decl., ¶ 12. In June 2007, news articles concerning Pepin's arrest and acquittal were posted. Knight-Jadczyk Decl., Ex. B. These developments then became a further topic of discussion. The comments critical of Pepin and HBI were all either premised on the news articles or were clearly opinion. Thus, they are protected under the First Amendment.

Pepin and HBI apparently do not believe in free speech. In December 2007, HBI's vice president sent an e-mail to SOTT.net's administrator requesting that she "immediately remove any thread, story or article, regardless of content, mentioning Eric Pepin or Higher Balance Institute" and "actively moderate to remove any mention of Eric Pepin, Higher Balance Institute from appearing on your sites in the future." Knight-Jadczyk Decl., Ex. I.

In response, SOTT.net renamed the forum page from "Channel Watch & New Age COINTELPRO >> Eric Pepin – Higher Balance Institute – Front for Pedophiles?" to "Channel Watch & New Age COINTELPRO >> Eric Pepin – Higher Balance Institute – Discussion". It did not remove or alter any member posts concerning Pepin or HBI. Knight-Jadczyk Decl., ¶ 20.

In March 2008, HBI filed this Amended Complaint ("Complaint") against Quantum Future Group, Inc. ("QFG"), Quantum Future School, Signs of the Times, and Laura Knight-Jadczyk ("Defendants"). The only defendant that has been served is QFG. The Complaint alleges that Ms. Knight-Jadczyk administered the site and posted as an employee or agent of QFG.

The Amended Complaint ("Complaint") alleges claims for (1) defamation – libel, (2) false light, (3) intentional interference with business relationships, and (4) intentional interference with prospective economic advantage. It seeks damages in an amount not less than $4,471,763, plus punitive damages. Complaint, ¶¶ 27, 41, 42, 52, 53, and p. 9 A-D.

## II.
## SUMMARY OF ARGUMENT.

HBI's complaint arises from statements made "in a place open to the public or a public forum in connection with an issue of public interest" and therefore must be stricken pursuant to

Oregon's anti-SLAPP statute unless HBI demonstrates a probability that it will prevail on its claims. O.R.S. § 31.150(2)(c) and (3).

No such showing is possible. Section 230 of the Communications Decency Act (47 U.S.C. Section 230) immunizes Defendants from liability for the statements at issue that were made by third parties. Furthermore, the statements fall squarely under the protections of the First Amendment. Without exception, the statements are all constitutionally protected expressions of opinion rather than verifiable assertions of fact. HBI cannot meet its burden to prove, by clear and convincing evidence, that the statements are false, let alone that Defendants knew that they were false or had serious doubts as to their truth. Thus, this special motion to strike must be granted, and HBI's complaint must be stricken.

## III.
## STATEMENT OF FACTS.

### A.    Eric Pepin and HBI.

Pepin is identified on HBI's website (located at www.higherbalance.com) as HBI's "founder and creator." Jones Decl., Ex. A. The entire organization obviously revolves around Pepin. In fact, an icon entitled "Eric Pepin" on HBI's website provides a link to Pepin's personal Internet home page, www.ericpepin.com, which provides personal accounts of his travels to meditation retreats. Jones Decl., Ex. I.

Pepin's products are offered for sale through HBI's website and include CDs, DVDs, "magnetic pills" for $39, an "awareness pendant" for $79, and other merchandise, including Internet courses based on Pepin's teachings. Jones Decl., Ex. A-F. Prices for individual meditation CDs range from $29 to $69; meditation packages are sold for up to $499. Jones Decl., Ex. D and E. Prior to Pepin's arrest, HBI reached an annual high of $2 million in Internet sales. Knight-Jadczyk Decl., Ex. B.

HBI claims that more than 40,000 copies of Pepin's book, "The Handbook of the Navigator," have sold worldwide. Jones Decl., Ex. G. Pepin has traveled throughout the country offering meditation retreats and promoting his meditation practices, which he touts on the

Internet as "the <u>MOST POWERFUL</u> guided meditation system in the world." Jones Decl., Ex.
B. Numerous video segments of Pepin offering his meditation instruction appear on the video-
sharing website YouTube. Jones Decl., Ex. H. Following Pepin's acquittal, he issued a press
release, which was published on the Internet at www.send2press.com Jones Decl., Ex. J.

**B.      Defendants.**

QFG is a California non-profit corporation that promotes the study of ideas and research
in a variety of scientific and sociocultural fields. Knight-Jadczyk Decl., ¶ 2. Laura Knight-
Jadczyk is the vice president of QFG. *Id.* She receives no salary. *Id.* QFG reflects the
academic interests of Ms. Knight-Jadczyk and her associates, but is an independent legal entity
that exists on donations and book sales. *Id.* Those who receive grants from QFG assign some of
the resulting intellectual property to QFG, but while doing research or administering SOTT.net,
they are not QFG's agents or employees. *Id.*

QFG operates the Quantum Future School ("QFS"), a think-tank for academics and
individuals. QFS pays for the basic living expenses of those participants who live at QFS's
facility in France. Knight-Jadczyk Decl., ¶ 4.

Signs of the Times website, or SOTT.net, is an independently operated website for news
and analysis that focuses on trends and events of interest to its members. Knight-Jadczyk Decl.,
¶ 5. These include techniques and methods to aid in the development of objective consciousness;
the study of information collection, analysis and distribution; and objective analysis of major
fields of knowledge, including religion. *Id.* News stories are collected from a variety of media
sources and posted on SOTT.net. *Id.* There are discussion forums for members to post their
commentary and analysis on various topics. *Id.*

Knight-Jadczyk is one of more than 50 editors of SOTT.net, and moderates some of its
forum pages. Knight-Jadczyk Decl., ¶ 10. SOTT.net also has at least nine other moderators. *Id.*
Knight-Jadczyk pays for SOTT.net's expenses, and is reimbursed by QFG. Knight-Jadczyk
Decl., ¶ 9. The domain name "SOTT.net" is registered to her husband, Arkadiusz Jadczyk. *Id.*

As editor and moderator, Knight-Jadczyk monitors posts to ensure that posters do not

maliciously harass others, send spam, or post commercial messages. Knight-Jadczyk Decl., ¶ 10. Offending emails are deleted. *Id.* Posts that remain on the website's forum are in no way edited or otherwise altered. *Id.* The posts are the opinions of the authors, and in no way represent opinions of SOTT.net, Quantum Future Group, or Quantum Future School. *Id.*

Knight-Jadczyk's interest in human thought and consciousness, the history of knowledge, and the evolution of society has led her to extensively research and write about topics such as psychopathy and secret government projects, including the U.S. Government's Counter Intelligence Program ("COINTELPRO"). Knight-Jadczyk Decl., ¶ 3. COINTELPRO was an illegal program operated by the FBI in the United States during the 1950s and '60s that was tasked with investigating, infiltrating, and disrupting dissident political organizations. *Id.* Knight-Jadczyk is particularly interested in exploring the connection between the growth of the New Age movement and COINTELPRO. *Id.* This is the focus of one of SOTT.net's forum pages, under the heading "Channel Watch & New Age COINTELPRO." *Id.*

**C.    The Allegedly Libelous Posts.**

All four claims in the Amended Complaint ("Complaint") are based on the following allegedly defamatory statements:

a.    HBI is a "front for pedophilia";

b.    HBI is a "cointelpro" organization;

c.    Meditation, as sold by HBI, is an act of "falling into confluence with a psychopathic reality";

d.    Those associated with HBI must be careful to avoid sexual molestation by HBI members;

e.    HBI is "conning" the public;

f.    "Fishy" sexual conduct is occurring at HBI;

g.    HBI "leads people more deeply into sleep"; and

h.      HBI promotes "homosexuality and sexual techniques for spiritual mastery."[1]
Complaint, ¶ 23.  In order to analyze each of these statements in context, the posts from which
they apparently were taken are listed below.  For ease of reference, words and phrases that were
quoted in the Complaint appear in bold here; they were not in bold or otherwise emphasized in
the original posts.

### 1.      HBI is a "front for pedophilia" and a "cointelpro" organization.

In June 2007, after the discussion of Pepin and HBI's methods had been going on for over
a year, news articles concerning Pepin's arrest and acquittal from The Oregonian in July 2006
were posted on the SOTT.net forum page discussing Pepin and HBI.  Knight-Jadczyk, Ex. B.
On November 4, 2007, Knight-Jadczyk re-posted portions of the Oregonian articles, as listed
below:

> Pepin was arraigned Tuesday in Washington County criminal court on one
> count of using a child in a display of sexually explicit conduct, two counts
> of second-degree sexual abuse, and four counts of third-degree sexual
> abuse. [...]
>
> Jamison Dwight Priebe, 21, who works for Pepin and lives at the same
> address in the 19600 block of Southwest Cooperhawk Court in Aloha, also
> was arrested on one count each of using a child in a sexual display and
> third-degree sexual abuse.  [...]
>
> According to an affidavit Smith filed with a request for a search warrant,
> the alleged victim told police that Internet customers who rave about
> Pepin's teachings are men and women usually older than 35.  But, the man
> said Pepin told him he should recruit "good-looking men☐  between the
> ages of 18 and 24 to work for him. [...]
>
> The boy, Smith wrote, "was taught by Pepin to believe that the sexual
> contact was only a spiritual necessity.☐  But after a while, the affidavit
> says, the boy decided he was being used by Pepin, who bought him meals
> and paid him $200 after sex.  http://www.oregonlive.com/oregonian/sto ...
> amp;coll=7
>
> A Washington County Circuit judge called the leader of a metaphysical
> Internet sales company manipulative and controlling and his testimony

---

[1]  HBI's Complaint paraphrases the allegedly libelous posts but does not specifically identify
them.  We were unable to locate the source of this statement, but the same arguments that apply
to the rest of the allegedly defamatory posts would apply to this statement as well.

unbelievable, even as he acquitted him Wednesday of charges that he had sex with an underage boy.

Judge Steven L. Price, after a five-day trial without a jury, found Eric James Pepin, 40, not guilty of two counts of second-degree sexual abuse, four counts of third-degree sexual abuse and one count of using a child in a display of sexually explicit conduct. [...]  Price said it was "probable that the conduct alleged in all counts occurred ...

[...]
The accuser testified Pepin had him take off his shirt the first day they met at Pepin's Beaverton home in April 2004.

"He was going to try and fix my energy and he needed me to trust him," the accuser said. Pepin touched the teen's "chakra points" on his heart, head and lower abdomen.

"Eric asked me to tell him everything I had done in my life that I was ashamed about," the teen added.

The accuser said Pepin asked him how old he was the first day they met and that he told him the truth.

"He said students had to be 18 because he didn't like parents fussing around," the accuser said.

But within days the two were having sex, including a three-way encounter with Priebe, the youth testified. Pepin called it "crossing the abyss," the accuser said, "surrendering yourself to your teacher, your master."

Pepin testified he is gay and has had sexual relationships with most of his 11 employees ...

Pepin's Higher Balance Institute, now on Northwest Saltzman Road in Cedar Mill, reached an annual high of $2 million in Internet sales of meditation CDs, tapes and books before his arrest in July. [...]

Andrew Erwin, deputy district attorney, called Higher Balance nothing more than a sex cult run by a "snake oil" salesman who preys on the troubled.

Immediately following the re-posted news articles, Knight-Jadczyk posted:

> "It's really starting to look like this Eric Pepin and his Higher Balance Institute may be merely **COINTELPRO** and a **front for pedophilia.**"

Knight-Jadczyk Decl., Ex. C.[2]

---

[2]  During the meet and confer session, HBI's counsel stated a belief that this quote has been (footnote continued)

2. **HBI is "conning" the public, and meditation, as sold by HBI, is an act of "falling into confluence with a psychopathic reality".**

On November 4, 2007, in response to a post that "HBI serves some puropse [sic], its purpose is to teach people that we're all alseep [sic] still," Knight-Jadzyk posted the following:

> Horse hockey. There is nothing there except a pathological deviant and his deviant followers **conning** the public. There's nothing at all about 'waking up' there. For example, most meditation will do little but put you back to sleep. It's an act of self-calming and **falling into confluence with the psychopathic reality.**

Knight-Jadczyk Decl., Ex. D.

3. **Those associated with HBI must be careful to avoid sexual molestation by HBI members.**

On November 30, 2007, in response to criticism by an HBI supporter identified as "manny," anonymous poster "Ryan, Jedi Council Member" posted the following:[3]

> . . . Just because you were not molested by Pepin doesn't mean that others who claim to be, were not. And if you're a good looking guy, I'd suggest that you be very careful in your dealings with Pepin and HBI, lest you wind up in a similar position to Mr Smith

Knight-Jadczyk Decl., Ex. E.

4. **"Fishy" sexual conduct is occurring at HBI.**

On December 5, 2007, in response to criticism by the same HBI supporter, anonymous poster "beau, Dagobah Resident" posted the following:

> Testy, aren't we? Talk about slander. You are claiming that the law enforcement authorities intentionally went after Pepin. You better have some proof of that if the Oregon police get wind of your accusations. You want facts? Pepin was indicted by a grant jury. Do you think that grand juries are convened all the time just for a vendetta? No, you need pretty strong evidence to do that. The authorities just can't create a person who claims to have been sexually abused by Pepin. Something happened between the two

---

materially altered. QFG does not believe this to be the case. Presumably HBI will identify the exact statement that it believes was made.

[3] HBI's Complaint attempts to paraphrase, but does not quote from, the allegedly libelous post. It does not attach the posts in question. This appears to be the post at issue.

of them, and something **fishy** is going on at the Higher Balance
Institute. That much is clear. And THAT is the reason for the
discussion here. You don't like it? Go somewhere else and
complain.

Knight-Jadczyk Decl., Ex. F.

     **5.**     **HBI "leads people more deeply into sleep".**

On December 6, 2007, in response to criticism and questions from HBI supporter

"manny," forum moderator "anart" posted the following:

> This forum is not in the habit of 'having a go' at anyone or
> anything. It is a forum that serves a very specific purpose – one of
> research to approach an objective understanding of our reality. As
> such, we categorize information that leads away from an objective
> understanding of our reality in the cointelpro section. If the
> information provided by a source, in this case, HBI, **leads people
> more deeply into sleep** and self-calming, or if it does anything
> other than help to reveal the objective truth of this reality while
> claiming to promote 'personal or spiritual growth' – then it is, for
> all intents and purposes, cointelpro."

Knight-Jadczyk Decl., Ex. G.

That same day, in response to another post from "manny," "anart" posted the following:

> Manny, in order for one to understand how **HBI leads people
> more deeply into sleep**, one must understand the difference
> between being asleep and being awake. One must understand self-
> calming and awakening and the difference between the two. This
> is where you seem to be lacking understanding, which is certainly
> your choice.

Knight-Jadczyk Decl., Ex. H.

**IV.**

**THE ANTI-SLAPP STATUTE APPLIES.**

This special motion to strike is premised on Oregon's anti-SLAPP statute. O.R.S. §§

31.150-31.155. "Anti-SLAPP" stands for "Anti-Strategic Lawsuit Against Public Participation."

*Metabolife Int'l, Inc. v. Wornick,* 264 F. 3d 832, 837 n. 7 (9th Cir. 2001). The purpose of

California's analogous statute has been described as the "protection of individuals from meritless,

harassing lawsuits whose purpose is to chill protected expression." *Id.*

Under this statute, a defendant in a civil action may make a special motion to strike a

claim that arises out of, among other things, any "statement made, or written statement or other

document presented, in a place open to the public or a public forum in connection with an issue of public interest." O.R.S. § 31.150(2)(c). The statute also applies to any claims that arise out of "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." O.R.S. § 31.150(2)(d).

Defendants in federal court may avail themselves of the anti-SLAPP statute . *Card v. Pipes,* 398 F. Supp. 2d 1126, 1137 (D.Or. 2004); see also *Thomas v. Fry's Electronics, Inc .,* 400 F. 3d 1206, 1206-07 (9th Cir. 2005).

To succeed on the motion, QFG must first make a prima facie showing that the claims at which the motion is directed arise out of one of the categories described. O.R.S. § 31.150(3). Then, the burden shifts to HBI to show a probability that it will prevail on its claims by presenting substantial evidence to support a prima facie case. *Id.* If HBI fails to meet this burden, the court shall grant the motion and enter a judgment of dismissal without prejudice. O.R.S. § 31.150(1).

## A.    HBI's Claims Arise From Defendant's Statements Made in a Public Forum in Connection With an Issue of Public Interest.

There cannot be any real dispute that the anti-SLAPP statute applies here, since all four of HBI's claims arise out of statements that fall squarely within the activity protected by the anti-SLAPP statute.

### 1.    The SOTT.net Forum Page Constitutes a Public Forum.

All of HBI's claims are based on posts on the SOTT.net forum page, the modern equivalent of the classical public forum. Oregon modeled its anti-SLAPP law based on California's statute. California courts have recognized that the Internet is a public forum for purposes of that state's anti-SLAPP law. "Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication such as electronic communication media like the Internet." *ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4[th] 993, 1006, 113 Cal.Rptr.2d 625 (Cal.App. 2001).

In *ComputerXpress*, the court held that web site message boards satisfied the criteria for a public forum because they were "accessible free of charge to any member of the public" and provided a place where the public "may read the views and information posted, and post on the site their own opinions." *Id.* at 1007.

Similarly, in *Global Telemedia International, Inc. v. Doe*, 132 F.Supp.2d 1261, 1264 (C.D. Cal. 2001), the district court applied the anti-SLAPP law to claims arising out of posts on financial website bulletin boards, or "chat-rooms," that were "open and free to anyone who wants to read the messages." *Id.*

SOTT.net is accessible free of charge to any member of the public. The forum pages are open and free to anyone who wants to read the posts. Membership is also free and entitles the members to post their own opinions. Knight-Jadczyk Decl., ¶ 5. Thus, the SOTT.net forum pages constitute a public forum for application of the anti-SLAPP law.

### 2. The Merits of HBI's Meditation Teachings and the Sex Abuse Charges Against Pepin are Issues of Public Interest.

No Oregon appellate courts have interpreted "an issue of public interest" as referenced in the anti-SLAPP law, nor does the statute itself define the term. "The term has been applied broadly, however, in Oregon state and federal cases." *DuBoff v. Playboy Enterprises International, Inc.*, 2007 WL 1876513, *7-8 (D.Or. June 26, 2007, Slip Copy) (public interest standard was met by an article describing litigation surrounding the ownership of "sex.com" domain name). *See also Card*, 398 F. Supp. 2d at 1137 (applying the anti-SLAPP statute to claims based on republication on Internet think tank's website of statements that attributed anti-Israel statements to plaintiff); *Thale v. Business Journal Publ'ns,* Mult. Co. Case No. 0402-02160, Order at p. 1 (May 20, 2004) (applying statute to claims arising from article about the plaintiff's resignation from InFocus Corp. and business decisions made while employed there); *Kurdock v. Electro Scientific Indus ., Inc.*, Mult. Co. Case No. 0406-05889, Order at pp.1-2 (Oct. 15, 2004) (statements made by employer to employees and shareholders concerning plaintiff's termination were "an issue of public interest").

Oregon state and federal courts have applied the anti-SLAPP statute to statements involving private companies. For example, in *Gardner v. Martino*, 2005 WL 3465349 (D.Or. Sept. 19, 2005), the court found that comments on a national talk-radio show about a single consumer's dealings with an Oregon retailer constituted statements about a public issue or an issue of public concern. *Id.* at *7. The court found "most persuasive" the California appellate court cases holding that "statements about the quality of consumers goods and services are matters of public interest." *Id. See, e.g., Wilbanks v. Wolk*, 17 Cal. App. 4th 883, 898-899, 17 Cal. Rptr.3d 497, 506-07 (Cal. App.2004) ("Consumer information, … generally is viewed as information concerning a matter of public interest."); *DuPont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal. App. 4th 562, 567, 92 Cal.Rptr.2d 755, 759 (Cal.App.2000) (statements comparing quality and effectiveness of drug products made "in connection with a public issue"); *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1363, 78 Cal.Rptr.2d 627, 638 (Cal.App.1998) ("statements about the contents of [plaintiff's] product were a matter of public concern," and "the public has a well-recognized interest in knowing about the quality and contents of consumer goods"); *Church of Scientology of Cal. v. Wollersheim*, 42 Cal.App.4[th] 628, 650, 49 Cal.Rptr.2d 620 (1996) (stating, albeit in dictum, that examples of matters of public interest include activities of private entities that may impact the lives of many individuals, such as "product liability suits, real estate or investment scams, etc.").

Here, the forum page posts concerning HBI's metaphysical meditation teachings and products certainly constitute an issue of public interest. HBI claims more than 40,000 people worldwide have bought Pepin's book, "The Handbook of the Navigator." Jones Decl., Ex. G. Prior to Pepin's arrest, HBI's Internet sales reached an annual high of $2 million (Knight-Jadczyk Decl., Ex. B), based on sales of products such as meditation CDs selling for up to $79, magnetic pills for $39, and an "awareness pendant" for $79. Jones Decl., Ex. C-F. Posts expressing skeptical criticism of these products and Pepin's teachings are matters of public interest.

The posts concerning the sex abuse charges against Pepin also concern a matter of public interest, both as they bear on HBI's products and as a public criminal matter. "[W]e believe it

important that the public be fully informed about what transpires inside our courtrooms." *Partington v. Bugliosi*, 56 F.3d 1147, 1159 (9th Cir. 1995). Arguably, these statements also trigger application of the anti-SLAPP statute under Section 31.150(2), subdivision (b) covering any "statement made, . . . in connection with an issue under consideration or review by a . . . judicial body . . ." Pepin himself recognized the publicity surrounding his trial and issued his own press release after his acquittal.

## V.
## SECTION 230 OF THE CDA IMMUNIZES DEFENDANTS FOR THIRD PARTY POSTS.

At the outset, it should be noted that QFG is not a proper defendant, and should be dismissed from this action. It is not the owner or operator of SOTT.net, and is not responsible for any of the allegedly libelous posts in question. Knight-Jadczyk Dec. ¶2, 5; 10. HBI has alleged that Knight-Jadczyk was QFG's employee or agent, but HBI will have to present substantial evidence of that fact in order to rely on any such argument.

Section 230 of the Communications Decency Act of 1996 ("CDA"), codified at 47 U.S.C. § 230, protects SOTT.net and its owners and operators from all liability for statements posted on the SOTT.net forum pages by third parties – including Knight-Jadczyk.

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It also states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3).

Immunity under Section 230 requires that: (1) the defendant is a provider or user of an interactive computer service ("ICS"); (2) the cause of action treat the defendant as a publisher or speaker of information; and (3) the statement or information at issue be provided by another content provider. *Zeran v. America Online. Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service" *Id.*

Section 230 immunity is "quite robust, adopting a relatively expansive definition of 'interactive computer service[.]'" *Carafano v. Metrosplash.com, Inc.,* 339 F. 3d 1119, 1123 (9th Cir. 2003) (Internet dating service provider was entitled to immunity from liability stemming from third party's submission of false profile). Thus, courts have applied immunity to a variety of entities and factual contexts: *Batzel v. Smith,* 333 F.3d 1018, 1032-1035 (9th Cir. 2003) (website operator may be immune for distributing e-mail sent to listserv); *Universal Communications Systems, Inc. v. Lycos, Inc.,* 478 F.3d 413, 418-421 (1st Cir. 2007) (message board not liable for users' messages); *Marczeski v. Law,* 122 F.Supp.2d 315, 327 (D. Conn. 2000) (individual who created private "chat room" was ICS provider entitled to immunity). Under this rubric, SOTT.net and its owners and operators are not liable for the allegedly defamatory statements posted by third parties on its forum pages.

Section 230 immunity is not altered by the fact that SOTT.net uses moderators to restrict use of its forum pages by spammers and advertisers, and to encourage the principles of Gurdjieff - self observation and objectivity. Section 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.[4] A central purpose for Section 230 "was to protect from liability service providers and users who take some affirmative steps to edit the material." *Batzel,* 333 F.3d at 1031. "The exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form

---

[4]  Section 230( c) provides:

> (1) Civil Liability. No provider or user of an interactive computer service shall be held liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. 230(c)(2)

and message." *Id.*

Numerous courts have agreed, including the District of Oregon, in an unpublished decision. *Barnes v. Yahoo*, 2005 WL 3005602, *4 (D.Or, 2005) (Yahoo not liable despite alleged failure to fulfill its promise to remove  tortious material ). *See also Carafano*, 339 F.3d at 1124 ("So long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."); *Ben Ezra, Weinstein, and Company v. America Online Inc.*, 206 F.3d 980, 985-986 (10th Cir. 2000) (deleting of information did not transform ICS provider into information content provider).

Thus, QFG, QFS and SOTT.net cannot be held liable for any of the allegedly defamatory posts, and should be dismissed from this action.  In addition, Knight-Jadczyk (and QFG if Knight-Jadczyk is deemed a QFG agent or employee), is not liable for third party posts.  HBI's Complaint asserts liability based on three statements made by anonymous posters who are not defendants in this action:  that those associated with HBI must be careful to avoid sexual molestation by HBI members (paraphrased in Complaint); that "there is something fishy" occurring at HBI; and that HBI "leads people more deeply into sleep".  Complaint, ¶ 23(d),(f) and (g).

Section 230 protects Knight-Jadczyk and QFG from liability for these statements since it expressly grants providers and users the same immunity on the same terms. 47 U.S.C. § 230(c)(1) ("[n]o provider or user. . . .shall be treated as the publisher or speaker . . ."). *See also Barrett v. Rosenthal*, 40 Cal.4th 33, 59, 146 P.3d 510, 527 (Cal 2006) (Section 230(c) protects user's republication of information); *Batzel*, 333 F.3d at 1030 (court found it unnecessary to resolve whether website operator was "service provider" or "user," because statute confers immunity on both).  Thus QFG, purportedly acting through Knight-Jadczyk, cannot be held liable for the allegedly libelous posts by third parties, and allegations concerning them should be stricken.

## VI.
## THE FIRST AMENDMENT PROTECTS THE SPEECH AT ISSUE; THEREFORE, HBI CANNOT SHOW THAT IT WILL PREVAIL.

Since the anti-SLAPP statute applies, the burden shifts to HBI to (1) establish a prima

facie case for each of its claims, and (2) present substantial evidence to demonstrate a probability

that it will prevail. O.R.S. § 31.150(3). HBI "cannot simply rely on the allegations in the

complaint . . . but must provide the court with sufficient evidence to permit the court to

determine whether there is a probability that the plaintiff will prevail on the claim." *Gardner*,

2005 WL 3465349 at *8 (citing *ComputerXpress,* 113 Cal. Rptr. 2d at 641).

HBI cannot meet its burden. Without exception, the allegedly libelous posts are all

constitutionally protected expressions of opinion rather than verifiable assertions of fact. Many

of the statements at issue are not even defamatory. Moreover, HBI cannot meet its burden to

prove, by clear and convincing evidence, that the statements are false, let alone that Defendants

knew that they were false or had serious doubts as to their truth as is required under *New York*

*Times v. Sullivan*, 376 U.S. 254, 84 S.Ct 710, 11 L. Ed 2d 686 (1964).

### A.    All of the Allegedly Libelous Posts Express Constitutionally Protected Opinion, Rather Than Verifiable Assertions of Fact.

HBI cannot, as a matter of law, demonstrate a probability of success on its defamation

claim. None of the posts at issue make verifiable factual assertions. Instead, they express

constitutionally protected opinion.

The First Amendment and Article I, Section 8, of the Oregon Constitution limit liability

based on speech and publication. This "constitutional protection extends to statements of

opinion on matters of public concern that do not contain or imply a provable factual assertion."

*Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir.1995) (citing *Milkovich v. Lorain*

*Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed. 2d 1 (1990).)*

Protecting such statements ensures that "public debate will not suffer for lack of

'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the

discourse of our nation." *Milkovich,* 497 U.S. at 20 (*quoting Hustler Magazine, Inc. v. Falwell,*

599111.3                                         16

Defendant Quantum Future Group. Inc.'s
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT

485 U.S. 46, 53-55, 108 S.Ct. 876 (1988).)

The Ninth Circuit has developed a three-part "totality of the circumstances" test for determining whether a statement is protected opinion or a provably false assertion of fact. This test examines (1) the broad context in which the statement was made; (2) the specific context and content of the statement; and (3) whether the statement is sufficiently factual to be susceptible of being proved true or false. *Underwager,* 69 F.3d at 366. *See also Partington,* 56 F.3d at 1153; *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1053 (9th Cir.1990). Whether a statement is protected opinion is a question of law for the court. *Simpson v. Burrows,* 90 F.Supp.2d 1108, 1126 (D.Or. 2000).

Under this three-part analysis, all of the allegedly libelous posts are protected expressions of opinion. Of course, the most obvious protection for the statements concerning criminal behavior is that they are conjecture based on information disclosed in the posted Oregonian articles. This is discussed in part two of the analysis, which looks at the specific context and content of the statements.

### 1.    The broad context, general tenor, and subject matter of the posts make clear that they express points of view.

As a starting point, the court examines the statements in their "broad context," including their "general tenor," "subject," "setting" and "format." *Underwager*, 69 F.3d at 366. "The context in which the statement appears is paramount in [the court's] analysis, and in some cases it can be dispositive." *Knieval v. ESPN,* 393 F.3d 1068, 1075 (9th Cir.2005). *See also Koch v. Goldway,* 817 F.2d 507, 509 (9th Cir.1987) ("Context does resolve the matter.")

The Ninth Circuit in *Knieval,* 393 F.3d at 1075, for example, considered a defamation claim based on a photo caption on the EXPN.com web site stating: "Evel Knievel proves that you're never too old to be a pimp." The Court found that the site's subject, extreme sports and the youth culture and style associated with them, and its "lighthearted, jocular" tone all helped to negate the impression that the statement was one of verifiable fact. *Id.* at 1076. *See also Partington,* 56 F.3d at 1154 (readers of a lawyer's book about trial would expect to find "the

highly subjective opinions of the author rather than assertions of verifiable, objective facts").

Context is particularly paramount in considering liability based on statements on the Internet. For example, in *Global Telemedia*, 132 F.Supp.2d at 1267, the district court found that "the general tenor, the setting and the format" of allegedly libelous posts on an Internet message board "strongly suggest" that they were opinion. The posts were "part of an on-going, free-wheeling and highly animated exchange" about the company. *Id.* They were "full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents, such as corporate press releases or SEC filings." *Id. See also ComputerXpress*, 93 Cal.App.4[th] at 993 (Internet message board posts were "hyperbolic, informal, and lacked the characteristics of typical fact-based documents").

The same is true here. The mere fact that the statements at issue appear on the SOTT.net forum page "strongly suggest[s] that [the statements] are the opinions of the posters." *Global Telemedia*, 132 F.Supp.2d at 1267. The statements were posted in the general cacophony of an Internet message board on which thousands of posts appear about HBI and a wide array of intellectual issues. They appear under the heading "Channel Watch & New Age COINTELPRO." Participants in this forum, devoted to exploring the link between the FBI's illegal COINTELPRO program and the growth of the New Age movement, expect a certain amount of conjecture and surmise, ranting and raving. In short, the general context, subject matter, and tenor of the posts negate any assertion that they state verifiable facts.

### 2.    The specific content of the posts negates any impression that they assert provable facts.

Next, the court turns to "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Underwager*, 69 F.3d at 366. The specific context and content of the individual posts show that they constitute surmise and conjecture based on facts disclosed in The Oregonian news articles, and they are couched in colorful, figurative hyperbole and invective. Thus, they are protected.

     a.     **The posts constitute surmise and conjecture based on facts disclosed in The Oregonian news articles.**

Knight-Jadczyk's post stating "[i]t's really starting to look like this Eric Pepin and his Higher Balance Institute may be merely COINTELPRO and a front for pedophilia" immediately follows the text of two Oregonian news articles originally posted to the forum by a third party concerning Pepin's arraignment and trial. Her statement clearly expresses her own interpretation and conclusion based on facts disclosed in those articles and, as such, is protected as opinion.

"When a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment." *Partington,* 56 F.3d at 1156. "[R]eaders understand that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation." *Id.* (internal quotation omitted).

In cases closely analogous to this one, courts have held that Internet communications are not actionable when their factual basis is disclosed in an e-attachment or linked website. In *Global Telemedia,* 132. F.Supp.2d at 1268, an Internet chat room posting stated that company president "was busted for misrepresentation and overstatement of facts," and provided a link to an SEC document on which the statement was based. The district court concluded that "[b]y supporting the underlying document which supports his views, [defendant] has set forth an opinion, not fact." *Id.*

Similarly, in *Troy Group, Inc. v. Tilson,* 364 F.Supp.2d 1149, 1159 (C.D. Cal. 2005), the defendant attached a number of factual documents to his e-mail asking: "Are these guys the biggest crooks on the planet or what?" The district court concluded that "because the allegedly defamatory statement containing the word 'crooks' follows closely on the heels of the list of documents included in the email, the average reader would understand that [defendant's] opinion was based entirely and exclusively upon these documents." *Id.*

The same is true here. Knight-Jadczyk's statement reflects her own conclusions based on facts as reported in the Oregonian articles. Knight-Jadczyk Decl., ¶¶ 13 and 14, Ex. C and D.

599111.3                   19

Defendant Quantum Future Group. Inc.'s
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT

This includes testimony by Pepin's underage accuser that he was "taught by Pepin" that sexual contact was a "spiritual necessity," that it was "crossing the abyss," and "surrendering yourself to your teacher, your master." Knight-Jadczyk Decl., Ex. B. According to the Oregonian article, Pepin himself testified that he has had sexual relationships with most of his 11 employees. *Id.* Reasonable readers of Knight-Jadczyk's posting would understand that it represented "the writer's interpretation of the facts presented," and would be free to draw "his or her own conclusions based upon those facts." *Partington*, 56 F.3d at 1156. Knight-Jadczyk did not present or imply knowledge of any other facts.

The same is true for the other statements concerning the sex abuse charges against Pepin. All of these were posted in response to the news articles. No one even hints at having any additional information.

The other statements are all critiques of Pepin's teachings. They are opinions based on the previous postings by Pepin's supporters. They also are consistent with the teachings and lexicon of G. I. Gurdjieff, who taught that people are not generally conscious of themselves, but live in a state of "waking sleep." Knight-Jadczyk Decl. ¶ 6.

        **b.**    **The posts are full of colorful, figurative hyperbole.**

As the Supreme Court emphasized in *Milkovich,* the First Amendment protects the "rhetorical hyperbole," "vigorous epithet," "loose, figurative" language, or "lusty and imaginative expression" that enlivens writers' prose. *Milkovich,* 497 U.S. at 20. This is "speech that although literally containing assertions of fact is intended to express only points of view." Sack on Defamation, Section 4.2.4, page 4-14.

Protected speech may include "vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan,* 376 U.S. 254 at 270 ("Such language remains well within the realm of lusty and imaginative expressions protected by the Constitution."); *Underwager,* 69 F.3d at 367.

For example, the district court in *Simpson*, 90 F.Supp.2d at 1126, considered liability based on published letters stating that the plaintiff, a lesbian, was a "degenerate," "a pervert,"

and "leads a life of immoral conduct." The court concluded that none of the statements were actionable, because they were either opinion or failed to contain sufficient facts to be susceptible of being proved true or false. *Id.* "While rude, boorish, churlish, and mean, they amount to only rhetoric and ranting and are not the kind of ascertainable factual statements required to sustain a defamation claim." *Id.*

Terms commonly used to assert criminal misconduct can be rhetorical hyperbole. For example, in the landmark case of *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), the Supreme Court held that newspaper articles characterizing a developer's negotiating position as "blackmail" were not actionable. "No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [the developer] with the commission of a criminal offense." *Id.* at 14. "[E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." *Id.*

Similarly, in *Global Telemedia*, 132 F.Supp.2d at 1268-1269, the district court found not actionable statements that investors were "being manipulated by the company so that they can fly the coop again," shareholders had been "screwed out of your hard earned money," it was "time to talk about a lawsuit," and the principals of the company were guilty of "blatant mismanagement" and would hold shareholders' money and "dictate after they lie how it will be used." The court found that these statements would be read as mere invective of a disgruntled shareholder, "probably not written by someone with authority or firm factual foundations for his beliefs." *Id.* at 1269.

Other examples abound:

- *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 284, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974): The word "traitor" was used "in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization".

- *Gilbrook v. City of Westminster*, 177 F.3d 839, 861 (9th Cir. 1999): City council member's characterization of union official as a "Jimmy Hoffa" was colorful, figurative rhetoric, and not sufficiently susceptible of being proved true or false.

- *Troy Group* 364 F. Supp.2d at 1159: "No reasonable recipient of this email would believe that [defendant] intended to convey a factual assertion that [the plaintiffs] are 'crooks.'"

Importantly, the posts at issue in this case are equally full of invective, hyperbole, figurative speech and broad generalities. We analyze each statement in turn, starting by listing each statement in context, in contrast with its characterization in the Complaint.

**(1)    HBI is a "front for pedophilia" and a "cointelpro" organization:**

"It's really starting to look like this Eric Pepin and his Higher Balance Institute may be merely **COINTELPRO** and a **front for pedophilia.**"

Knight-Jadczyk Decl., Ex. C.

This statement is couched in the phrases "it's really starting to look like" and "may be" – indicating conjecture and surmise. As used here, the term "COINTELPRO" does not literally mean that HBI is a government organization charged with disrupting political dissidents, but that it is part of a growing New Age movement that leads people away from objective consciousness. Again, the phrase "front for pedophilia" is not necessarily meant to be taken literally, but comments on the vulnerability of those who may come in contact with HBI and Pepin, based on the testimony of Pepin's accuser that HBI employees were instructed to recruit "young, good-looking males."

**(2)    HBI is "conning" the public, and meditation, as sold by HBI, is an act of "falling into confluence with a psychopathic reality":**

Horse hockey. There is nothing there except a pathological deviant and his deviant followers **conning** the public. There's nothing at all about 'waking up' there. For example, most meditation will do little but put you back to sleep. It's an act of self-calming and **falling into confluence with the psychopathic reality.**

Knight-Jadczyk Decl., Ex. D.

Like the terms "black mail" and "crooks" above, the phrase "conning the public" is

rhetorical hyperbole commenting on the value, or lack thereof, of HBI's meditation teachings and

products. Use of colorful phrases like "[h]orse hockey" also convey an informal tone. The rest

of the post does not even refer specifically to HBI, but speaks in broad generalities concerning

the merits of meditation in general. This is a colorful critique of Pepin's teachings marketed by

HBI.

> **(3)     Those associated with HBI must be careful to avoid sexual molestation by HBI members.**
>
> . . . Just because you were not molested by Pepin doesn't mean that others who claim to be, were not. And if you're a good looking guy, I'd suggest that you be very careful in your dealings with Pepin and HBI, lest you wind up in a similar position to Mr Smith.

Knight-Jadczyk Decl., Ex. E.

This post was not made by any of the Defendants in this action, who are all immunized

from any resulting liability under Section 230 of the CDA, discussed *supra*. Moreover, this

cautionary warning is clearly intended to convey the personal viewpoint of the poster based on

Pepin's arrest and the Oregonian articles, rather than assert any verifiable facts based on personal

knowledge.

> **(4)     "Fishy" sexual conduct is occurring at HBI.**
>
> Something happened between [Pepin and his accuser], and something **fishy** is going on at the Higher Balance Institute. That much is clear. And THAT is the reason for the discussion here. You don't like it? Go somewhere else and complain.

Knight-Jadczyk Decl., Ex. F.

Again, this post was not made by any of the Defendants in this action, who are all

immunized from liability under Section 230 of the CDA. The term "fishy" is plainly rhetorical

hyperbole. *See Lewis v. Time, Inc.,* 710 F.2d 549, 554 (9th Cir.1983) (the term "shady" is "not

the kind of factual expression for which the Constitution permits liability to be imposed");

*DuBoff*, 2007 WL 1876513, at *9 (the terms "disgraced academic" and "shady past" were

"hyperbolic opinion" and not actionable). Moreover, the posts' argumentative tone supports the conclusion that it uses rhetorical hyperbole.

> **(5)    HBI "leads people more deeply into sleep"**

> . . . [W]e categorize information that leads away from an objective understanding of our reality in the cointelpro section. If the information provided by a source, in this case, HBI, **leads people more deeply into sleep** and self-calming, or if it does anything other than help to reveal the objective truth of this reality while claiming to promote 'personal or spiritual growth' – then it is, for all intents and purposes, cointelpro."

> * * *

> Manny, in order for one to understand how **HBI leads people more deeply into sleep**, one must understand the difference between being asleep and being awake. One must understand self-calming and awakening and the difference between the two. This is where you seem to be lacking understanding, which is certainly your choice.

Knight-Jadczyk Decl., Ex. G and H.

Again, this post was not made by any of the Defendants in this action, who are all immunized from liability under Section 230 of the CDA. It is not capable of defamatory meaning, and reasonable readers would not interpret it as asserting any verifiable facts. The concept of "being asleep" during life is drawn from the works of Gudjieff.

**3.    The posts at issue are not susceptible of being proved true or false.**

Additionally, the court must analyze "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Underwager*, 69 F.3d at 366. This analysis is closely related to the first two. "The First Amendment protects subjective evaluations because they are not susceptible of being verified as true or false." *Partington*, 56 F.3d at 1159 (negative statements concerning a lawyer's performance during trial are not ordinarily "susceptible of being proved true or false.") *See also IC Marketing, Inc. v. The Taunton Press, Inc.*, 2005 WL 503180 (D.Or. March 3, 2005), unpublished opinion (the term "disreputable" not subject to interpretation as stating or implying a provable assertion of fact).

The allegedly libelous posts at issue here either express skepticism concerning the HBI's

teachings, or indignation concerning the alleged sexual abuse by its founder and alter-ego, Pepin. Such assessments are "inherently subjective" and "not reasonably susceptible of being proved true or false." *Partington,* 56 F.3d at 1159. Critiques, consequently, "cannot ordinarily serve as the basis of a defamation claim." *Id.* There is no "objective standard" by which one can measure their truth or falsity. *Id.* Without exception, then, the statements are absolutely protected expressions of opinion.

**B.    HBI's Defamation Claim Must be Stricken, Because It Cannot Meet Its Evidentiary Burden To Show That the Statements Are False.**

Even if the statements were not protected as opinion, truth is always a defense. *Bahr v. Statesman Journal Co.,* 51 Or. App. 177, 180, 624 P.2d 664 (1981). ("It is axiomatic that 'truth' is a complete defense in a defamation case.") Indeed, a statement need only be substantially true in order to be protected from liability. *Masson v. New Yorker Magazine,* 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) ("[A] statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'") It is "a constitutional requirement that plaintiff bear the burden of showing falsity …" *Milkovich,* 497 U.S. at 16 (quoting *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).)

HBI cannot meet its burden to show that the allegedly libelous posts are false. Since it is a public figure, discussed *infra,* HBI must prove falsity by clear and convincing evidence. *Fodor v. Leeman,* 179 Or.App. 697, 701, 41 P.3d 446 (Or.App. 2002), citing *New York Times,* 376 U.S. at 279-80. *See also Rattray v. City of National City,* 51 F.3d 793, 801-802 (9th Cir. 1994) (applying preponderance of evidence standard to falsity – except where plaintiff is a public figure). HBI cannot meet this burden.

With respect to the posts concerning sexual activity, it is undeniable that Pepin and another HBI employee were charged with multiple counts of sex abuse. Knight-Jadczyk Decl., Ex. B. The judge reportedly stated it was "probable that the conduct alleged in all counts occurred," though the prosecutor had not met its burden to prove guilt beyond a reasonable

doubt. *Id.* The judge also reportedly characterized Pepin's testimony denying the charges as unbelievable. *Id.* HBI cannot meet its burden to show the falsity of any implied factual assertions in the allegedly libelous posts.

**C.    HBI's Defamation Claim Must be Stricken, Because It Cannot Meet its Evidentiary Burden to Show Actual Malice.**

Where statements are about public figures, the plaintiff must show that the defendant acted with actual malice in publishing the material. *New York Times*, 376 U.S. at 279-80; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974). This requires showing, at the very least, that the speaker knew the statement was false or "entertained some serious doubts" as to its truth. *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) "The standard is a subjective one – there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of probable falsity." *Id.*

The Ninth Circuit has stated that actual malice requires showing that the defendant "engaged in 'purposeful avoidance of the truth.'" *Dodds v. American Broadcasting Co.*, 145 F.3d. 1053, 1061 (9th Cir. 1998). Actual malice must be shown by clear and convincing evidence. *Fodor*, 179 Or.App. at 701, *citing New York Times*, 378 U.S. at 279-80.

**1.    HBI and Pepin are Both Public Figures, and The Complaint Seeks Punitive Damages.**

Two important considerations in determining whether an individual is a public figure are exposure to the risk of defamation and access to the media. *Gertz*, 418 U.S. at 344-45. Those who have "assumed roles of especial prominence in the affairs of society," some of whom "occupy positions of such persuasive power and influence," are designated as public figures for all purposes. *Id.* at 345. These individuals have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved," and they "invite attention and comment." *Id.* Public figures "enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Id.* at 344.

HBI and Pepin's effective promotion of themselves on the Internet and resulting financial success demonstrate that they do, indeed, "enjoy significantly greater access to the channels of effective communication". *Id.* In fact, they had the savvy to issue a press release following Pepin's acquittal. Jones Decl., Exhibit J. Multiple websites tell the story of how Pepin's teachings have come to the public as "the result of dedication of countless beings over the millennia that have blazed the trails of human thought . . . waiting for that final spark to ignite and make the quantum leap." Jones Decl., Ex. A. A search for the phrase "higher balance" on the video-sharing website YouTube, located at www.youtube.com, provides 65 video clips , apparently all of Pepin offering his meditation instruction. Jones Decl., ¶ 9 and Ex. H. Certainly, this "'enlightened master'" and "teacher and guide" qualifies as a public figure, as does his alter-ego and Internet sales company, HBI.

Although the Oregon Supreme Court in *Bank of Oregon v. Independent News, Inc.*, 298 Or. 434, 693 P.2d 35 (1985), concluded that the corporate defendant there was not a general purpose public figure, that case is distinguishable. The bank did not have general fame or notoriety in the community where the articles were published. *Id.* at 445. In addition, there was no pre-existing public controversy when the articles were published; the controversy was created by the articles themselves. *Id.* at 443, citing *Hutchinson v. Proxmire*, 443 U.S. 111 (1979) (the public controversy must pre-exist the defamatory publication).

In contrast, the controversy here, concerning HBI's teachings and the sex abuse charges against Pepin, certainly pre-exists the allegedly libelous posts. In addition, HBI purposefully exposes itself to risk of attack by brazenly promoting its spiritual philosophy and products on the Internet. HBI shamelessly promotes itself on the Internet as offering "the MOST POWERFUL guided meditation system in the world." Jones Decl., Exhibit B. Moreover, HBI and Pepin are one and the same; an icon entitled "Eric Pepin" on HBI's website provides a link to Pepin's home page, www.ericpepin.com, which provides his personal accounts of his travels. Jones Decl., Exhibit I. Given their media savvy, HBI and Pepin are general purpose public figures.

At the very least, in light of Pepin's highly publicized trial and subsequent acquittal,

which was celebrated with a press release, HBI and Pepin are limited purpose public figures –
someone who "voluntarily injects himself or is drawn into a particular public controversy …"
*Wheeler v. Green*, 286 Or. 99, 114, 593 P.2d 777, 787 (1979) (*citing Gertz*, 418 U.S. at 351).

Finally, regardless of whether they are public figures, HBI and Pepin must show actual
malice because they are seeking recovery of $4.47 in damages, plus punitive damages. *Gertz*,
418 U.S. at 349 ("[W]e hold that the States may not permit recovery of presumed or punitive
damages, at least when liability is not based on a showing of knowledge of falsity or reckless
disregard for the truth.")

### 2.    HBI Cannot Prove That  Defendants Entertained Serious Doubts As To The Truth of the Statements.

There is no evidence that Defendants knew the statements were false or engaged serious
doubts as to their truth.  Again, according to the Oregonian article even the judge at Pepin's trial
stated that he thought the conduct charged in all counts of sex abuse had probably occurred.
Jones Decl., Ex. B.  The allegedly libelous postings were all in response to the news article
concerning the charges and testimony against Pepin.  In a case such as this involving the
reporting of a third party's allegations, "recklessness may be found where there are *obvious
reasons to doubt the veracity of the informant or the accuracy of [the] reports." Harte-Hanks*,
491 U.S. at 667.  No such obvious reasons exist here.  HBI's defamation claim must be stricken.

### D.    Many of the Allegedly Libelous Posts are Not Even Capable of Defamatory Meaning.

A statement is defamatory if it tends to subject the plaintiff to "hatred, contempt, or
ridicule" or "diminish the esteem, respect, goodwill, or confidence" in which the plaintiff is held,
or "excite adverse, derogatory or unpleasant feelings or opinions" about the plaintiff. *Reesman
v. Highfill,* 327 Or. 597, 603, 965 P.2d 1030, 1034 (1998).  Whether a statement is defamatory is
a question of law for the court.  *Id.*  The court must interpret each statement "from the standpoint
of the average reader, judging the statement not in isolation, but within the context in which it is
made." *Norse v. Henry Holt & Co.,* 991 F.2d 563, 567 (9th Cir.1993).

In *Reesman*, 327 Or. at 605-606, the Oregon Supreme Court held that statements that a

pilot had executed a maneuver "frowned upon" by Federal Aviation Administration (FAA) and

that only "benign providence" had prevented an on-board explosion from occurring did not

defame the pilot. *See also Andreason v. Guard Publishing Co.*, 260 Or. 308, 310-11, 489 P.2d

944 (1971) (statement that couple was getting divorced was not defamatory); *Pippert v. Niece*,

518 F.Supp.2d 1265, 1273 (2007) (misstating amount of debt owed was not defamatory); *Walleri*

*v. The Federal Home Loan Bank,* 83 F.3d 1575, 1583 (9th Cir .1996) (statement that plaintiff

was terminated because she was unable to work was not defamatory); *Hardie v. Legacy Health*

*System,* 167 Or.App. 425, 432, 6 P.3d 531, 536 (2000) (reciting the basis for plaintiff's discharge

was not defamatory).

The statements that "[i]t's really starting to look like ... [HBI] may be merely

COINTELPRO", that "most meditation" is an act of "falling into confluence with the

psychopathic reality", and that HBI "leads people more deeply into sleep" are not capable of

defamatory meaning. None of these statements, by themselves, would expose HBI to hatred,

contempt, or ridicule or diminish the esteem in which it is held.

HBI has not pleaded, and cannot show, that the statements are defamatory by implication.

To do so, the link between the communications and the defamatory inference "must not be too

tenuous." *Reesman*, 327 Or. at 604. In addition, HBI would have to show "by clear and

convincing evidence that [Defendants] 'intended to convey the defamatory impression.'" *Dodds*

*v. American Broadcasting Co., Inc.*, 145 F.3d 1053, 1063-1064 (9th Cir. 1990) (quoting *Newton*

*v. National Broadcasting Co., Inc.*, 930 F.2d 662, 681 (9th Cir. 1990).)

Moreover, in light of the substantial publicity given to the sex abuse charges and lurid

trial testimony concerning HBI's founder and alter-ego, Pepin, it is hard to fathom how HBI's

reputation could be defamed by any of the allegedly libelous posts.

## VII.
## THE FIRST AMENDMENT APPLIES TO HBI'S OTHER CLAIMS

The same privileges and defenses that apply to HBI's claim for defamation-libel also

apply to its claims for false light and intentional interference with business relationships and

prospective economic advantage.  Thus, this special motion to strike must be granted, and HBI's

entire complaint must be stricken.

**A.    HBI's False Light Claim is Based on the Same Posts as Its Defamation Claim, and
        Fails for the Same Reasons.**

HBI's false light claim is based solely on the allegedly defamatory posts.  The same First

Amendment defenses that apply to its defamation claim also bar its false light claim.  *Time, Inc.*

*v. Hill*, 385 U.S. 374, 387-88, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *see also Cort v. St. Paul Fire*

*& Marine Ins. Cos., Inc.*, 311 F.3d 979, 987 (9th Cir.2002) ("When an invasion of privacy claim

rests on the same allegations as a claim for defamation, the former cannot be maintained as a

separate claim if the latter fails as a matter of law.") (internal quotation, citation, and ellipsis

omitted); *Partington*, 56 F.3d at 1160 (rejecting false light claims "for the same reason that we

rejected [plaintiff's] defamation claims based on those statements: both statements are protected

by the First Amendment, regardless of the form of tort alleged.").

Additionally, HBI cannot satisfy the actual malice standard expressly required under

Oregon law in order to prevail on a false light claim.[5]  This standard is virtually identical to the

---

[5]  The Oregon courts have held that the elements of a false light/invasion of privacy claim are as
follows:

> One who gives publicity to a matter concerning another that places the other
> before the public in a false light is subject to liability to the other for invasion of
> his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive
> to a reasonable person, and
>
> (b) the actor has knowledge of or acted in reckless disregard as to the
> falsity of the publicized matter and the false light in which the other would
> be placed.

*Dean v. Guard Publishing Co., Inc.*, 73 Or.App. 656, 659, 699 P.2d 1158 (1985) quoting
Restatement (Second) Torts § 652E.  It should be noted that although the *Dean* Court
recognized the tort of false light invasion of privacy, the Oregon Supreme Court has expressly
declined to do so.  *Reesman*, 327 Or. at 607 & n. 3, 965 P.2d at 1036 & n. 3.
(footnote continued)

---

actual malice standard imposed on public figures in defamation actions, and the finding of a lack

of actual malice for one claim will also bar the other claim. *McNabb v. Oregonian Publishing*

*Co.,* 69 Or.App. 136, 143, 685 P.2d 458 (1984).

**B.      HBI's Intentional Interference Claims are Based on the Same Posts, and Fail for the
Same Reasons.**

The same privileges and defenses that apply to HBI's defamation claim also bar its claims

for intentional interference with business relationships and prospective economic advantage.[6]

*Unelko,* 912 F.2d at 1058 (claim of tortious interference with business relationships is "subject to

the same First Amendment requirements that govern actions for defamation").

## VIII.
## DEFENDANTS ARE ENTITLED TO RECOVER FEES INCURRED IN BRINGING THIS MOTION.

If the court grants this special motion to strike, Defendants respectfully request recovery

of reasonable attorney fees and costs, as provided in the anti-SLAPP statute. O.R.S. § 31.152(3).

---

[6] Both of these torts require proof of the following:

(1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or the prospective advantage; and (6) damages. *Allen v. Hall,* 328 Or. 276, 281, 974 P.2d 199, 202 (1999).

## IX.
## CONCLUSION.

The anti-SLAPP statute applies and plaintiff cannot show a probability of prevailing.

Thus, QFG is entitled to have the complaint struck before its First Amendment rights are

burdened further.

Dated this 25ᵗʰ day of April, 2008.

COOPER, WHITE & COOPER LLP

By: _____

Stephen Kaus (appearing *pro hac vice*)
Attorneys for Defendant QUANTUM
FUTURE GROUP, INC.

Defendant Quantum Future Group. Inc.'s
MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT