UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HIGHER BALANCE, LLC, an Oregon
limited liability company, dba the
HIGHER BALANCE INSTITUTE,

       Plaintiff,                           Civil No. 08-233-HA

       v.                               OPINION AND ORDER

QUANTUM FUTURE GROUP, INC., a
California corporation, QUANTUM FUTURE
SCHOOL, SIGNS OF THE TIMES, and
LAURA KNIGHT-JADCZYK,

       Defendants.

_____

HAGGERTY, Chief Judge:

      This action has several issues pending that are related to substantive motions to strike the

Amended Complaint pursuant to Oregon's "Anti-Strategic Lawsuit Against Public Participation"

(SLAPP) statute. Oregon Revised Statute (ORS)31.150-31.155. At the outset, however, the

court is confronted with several jurisdictional challenges.

1  -- OPINION AND ORDER

This Opinion and Order resolves the jurisdictional challenges.  The court will issue a separate ruling regarding the possible applicability of the Anti-SLAPP statute and – if necessary – set a final discovery schedule.

**FACTUAL BACKGROUND**

Plaintiff Higher Balance LLC, doing business as Higher Balance Institute (plaintiff or HBI), is an Oregon-based company that provides products to help "its customers relieve stress, reduce anxiety, and achieve emotional balance and spiritual enlightenment though meditation techniques."  Pls. Am. Compl. ¶ 11.  Plaintiff was co-founded by Eric Pepin.  Pls. Opp'n to Defs.' Mot. to Dismiss at 2.

Defendant Quantum Future Group (QFG) is a California corporation that "promotes the study of ideas and research in a variety of scientific and sociocultural fields."  Def. Quantum Future Group's Mem. in Supp. of Special Mot. to Strike Compl. at 4 (citing Declaration of Laura Knight-Jadczyk, Para. 2).   Defendant Laura Knight-Jadczyk (Knight-Jadczyk) is the vice president of QFG.  Defendant Quantum Future School (QFS) is described as a think-tank for academics and individuals and is operated by QFG.  Def. Quantum Future Group's Mem. in Supp. of  Special Mot. to Strike Compl. at 4.  Defendant Signs of the Times (SOTT) is a website that is edited and moderated by Knight-Jadczyk.  *Id*.  She pays for SOTT's expenses and is reimbursed by QFG, and the Internet domain  name "SOTT.net" is registered to Knight-Jadczyk's husband, Arkadiusz Jadczyk.  *Id*.  The website provides discussion forums in which Internet users may post commentary and analysis.  *Id*.

On May 2, 2006, an anonymous poster on SOTT initiated an inquiry seeking information about HBI and Eric Pepin.  Decl. of Laura Knight-Jadczyk in Supp. of Defs.' Special Mot. to Strike Compl. at 5-7, Para. 11 (citing Ex. A-I).  A "forum thread" discussion ensued.  Several

posters praised HBI and its teachings.  Others questioned its motives and operations.  *Id*. at Para.

12.

On June 11, 2007, an anonymous user posted two articles published in The Oregonian

newspaper that addressed criminal charges brought against Eric Pepin.  The articles noted that

Pepin had been acquitted by bench trial of two counts of second-degree sexual abuse, four counts

of third-degree sexual abuse, and one count of using a child in a display of sexually explicit

conduct.  One post quoted the article as reporting that "[the trial judge] said that it was 'probable

that the conduct alleged in all counts occurred.'"  Def. Quantum Future Group's Mem. in Supp. of

Special Mot. to Strike Compl. 7.

In a subsequent response to the posting, defendant Knight-Jadczyk republished portions

of the articles and added some commentary.  Knight-Jadczyk, other forum moderators, and other

anonymous users continued to discuss HBI and Eric Pepin in additional postings.

In December 2007, HBI's vice president contacted Knight-Jadczyk and asked that she

"immediately remove any thread, story or article, regardless of content, mentioning Eric Pepin or

Higher Balance Institute" and "actively moderate to remove any mention of Eric Pepin [or]

Higher Balance Institute in the future."  Instead of assenting to these requests, Knight-Jadczyk

posted the communication on the forum.  However, the title of the forum page on which the

discussions at issue had taken place was changed from "Channel Watch & New Age

COINTELPRO >> Eric Pepin – Higher Balance Institute –  Front for Pedophiles?" to "Channel

Watch & New Age COINTELPRO >> Eric Pepin – Higher Balance Institute –  Discussion."

Decl. of Laura Knight-Jadczyk in Supp. of Defs.' Special Mot. to Strike Compl. Para. 19-20

(citing Ex. I).

On February 25, 2008, plaintiff HBI filed a Complaint in this court against defendants alleging (1) libel, (2) false light, (3) intentional interference with business relationships, and (4) intentional interference with prospective economic advantage.  On March 13, 2008, plaintiff filed an Amended Complaint.  Subsequently, all of the parties have engaged in an active motions practice seeking to streamline, clarify, or in some instances terminate this action.

**ANALYSIS**

**1.    Jurisdiction**

Among the motions now pending are three challenges to jurisdiction:  QFG's Motion to Dismiss for Lack of Jurisdiction [15]; Knight-Jadczyk's Motion to Dismiss for Lack of Personal Jurisdiction [24]; and QFS and SOTT's Motion to Dismiss for Lack of Personal Jurisdiction [32].

To determine whether personal jurisdiction exists, the court may consider the pleadings and evidence presented through affidavits, and may also order limited discovery to develop jurisdictional facts.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Data Disc, Inc. v. Sys.Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

In cases such as this one, in which the court elects to address a defendant's motion to dismiss for lack of jurisdiction without first holding an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citation omitted); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (a plaintiff need only make a *prima facie* showing of facts that support exercising jurisdiction over defendants).  Moreover,

> [t]o make that showing, [the plaintiff] need only demonstrate facts
> that, if true, would support jurisdiction over the Defendants.
> Unless directly contravened, [the plaintiff's] version of the facts is

> taken as true, and conflicts between the facts contained in
> declarations submitted by the two sides must be resolved in [the
> plaintiff's] favor for purposes of deciding whether a prima facie
> case for personal jurisdiction exists.

*Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (citing *Harris Rutsky*, 328 F.3d at 1129).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis: the exercise of jurisdiction must (1) satisfy the requirements of the long arm statute of the state in which the district court sits, and (2) comport with principles of federal due process. *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 559 (9th Cir. 1995); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

Under Oregon's long arm statute, Oregon courts assert jurisdiction to the extent permitted by federal due process requirements. *See* Or. R. Civ. P. 4L.

Turning to principles of federal due process, the due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co.*, 326 U.S. at 316). Minimum contacts encompasses two types of jurisdiction: general and specific. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

Defendants provide no direct contravention of plaintiff's pre-discovery allegations that defendants are alter egos and instrumentalities of each other. These allegations include:

\*        Defendant Knight-Jadczyk is the Vice President of defendant QFG;

\*        Defendant QFG operates defendant QFS;

\*        Defendant QFS has staff members who are responsible for providing the content for the SOTT website;

\*        Defendant Knight-Jadczyk finances SOTT.net's operations and is reimbursed using QFG funds; she serves as an administrator, editor, contributor and moderator of SOTT.net and polices the content posted there;

\*        The SOTT.net domain name is registered to Knight-Jadczyk's husband, who serves as the President of QFG;

\*        Defendant QFG finances defendant Knight-Jadczyk and other QFS participants;

\*        The QFS facility is located at the same residential compound at which defendant Knight-Jadczyk resides and from which QFG and SOTT operate;

\*        Defendant QFG finances the living expenses for those residing at the compound;

\*        Defendant QFG uses SOTT.net to finance itself;

\*        Defendant QFG's 2004, 2005 and 2006 tax exemption forms to the IRS indicate that the QFG volunteer staff maintained daily publications on the web;

\*        A notice at the "home page" for SOTT.net states: "Emails sent to Signs of the Times, Ark, Laura, or Cassiopaea become the property of Quantum Future Group, Inc and may be republished without notice."

Any of defendants' purported challenges to these factual allegations summary must be resolved in plaintiff's favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists.  In light of this, the court concludes that the analysis regarding plaintiff's *prima facie* showing is applicable to each of the defendants.  This analysis supports exercising specific jurisdiction over each of the defendants.[1]

---

1        This court draws no conclusion as to whether general personal jurisdiction might apply. For a defendant to be subject to general personal jurisdiction, defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Reebok Int'l Ltd. v.*

Specific jurisdiction exists where: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself or herself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). When the plaintiff meets the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Burger King*, 471 U.S. at 476-78)).

### A.    Purposeful availment

The phrase "purposeful availment" applies to a defendant who purposefully directs activities toward a forum state. *Schwarzenegger*, 374 F.3d at 802. A non-resident tortfeasor defendant who intentionally causes injuries within a forum state should reasonably anticipate being haled into court in that state. *Calder v. Jones*, 465 U.S. 783, 790 (1984). In *Calder*, the Supreme Court found personal jurisdiction was properly asserted over a defendant whose libelous actions were directed at the plaintiff resident of the forum state. *Id*. at 788-90. The Court did so by recognizing that purposeful availment is satisfied even by a defendant whose only contact with the forum state is through "purposeful direction" of a foreign act that has an effect in the forum state. *Id*. This "effects test" requires a showing that the defendants (1) allegedly have committed an intentional act, (2) aimed the act expressly at the forum state, and

---

*McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." *Tuazon*, 42 F.3d at 1169.

(3) knew that harm arising from the act was likely to be suffered in the forum state.  *Id.*; *see also* *Schwarzenegger*, 374 F.3d at 803 (also citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

    In the case at bar, there is a *prima facie* showing that defendants' allegedly defamatory statements were intentionally published, these acts were expressly aimed at a party that defendants knew to be a resident of Oregon, and plaintiff's alleged harm was suffered in Oregon. The only element of the effects test that might be considered close is whether defendants' conduct could be said to have been expressly aimed at plaintiff.  However, this element "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *See Bancroft & Masters*, 223 F.3d at 1087.  Plaintiff's allegations meet this standard easily.

    The court notes that jurisdiction may also arise out of the conduct of interactive Internet sites.  *See, e.g., Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 916-17 (D. Or. 1999) (adopting a "sliding scale" analysis to determine whether an Internet site could support personal jurisdiction).

    The *Millennium* court declined to adopt a "broad view of personal jurisdiction" regarding Internet sites, but recognized that there should be a deliberate action within the forum state "in the form of transactions between the defendant and residents of the forum *or conduct of the defendant purposefully directed at the residents of the forum state*."  *Id.* at 921 (citing *Calder*, 465 U.S. at 788-90) (emphasis added).  Because the *Millennium* defendant did not take action to create a substantial connection with Oregon, and did not "purposefully target its activities at Oregon," the court concluded that the exercise of personal jurisdiction would have been improper.  *Id.* at 921-22.

Here, however, plaintiff advances factually supported allegations that defendants engaged in deliberate conduct that was purposefully directed at plaintiff, a resident of Oregon. Accordingly, the first prong of the specific jurisdiction is plainly met.

### B.    Forum-related activities

The second element of the specific, personal jurisdiction test requires the plaintiff to show that the claims arise out of, or are related to, the defendant's forum-related activities. *Ziegler*, 64 F.3d at 474.  A "but for" test is applied, and in cases in which a defendant has "ongoing contacts" with a forum state, its alleged conduct – even if undertaken in a foreign country – is construed as arising out of forum-related activity if the conduct had the effect of injuring a resident in the forum state, and *but for* that conduct, that resident's injuries would not have occurred.  *Harris Rutsky*, 328 F.3d at 1131-32.  But for defendants' utilization of its website to direct allegedly defamatory statements at plaintiff, plaintiff would not have allegedly suffered harm in Oregon.  This court concludes that plaintiff's claims arise out of defendants' forum-related activities.

### C.    Jurisdiction comports with substantial justice

Finally, as noted above, if plaintiff meets the first two elements of the specific, personal jurisdiction test, the burden rests upon the defendants to show that the exercise of jurisdiction fails to comport with fair play and substantial justice.  To defeat personal jurisdiction, defendants must present a compelling case that the presence of some other considerations render jurisdiction unreasonable.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

The reasonableness of asserting jurisdiction is assessed to prevent a party from deploying jurisdictional rules "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage in comparison to his opponent.'"  *Core-Vent*

*Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (citing *Burger King*, 471 U.S. at 478).

The court examines seven factors to determine whether the exercise of jurisdiction is reasonable:

1.      the extent of the defendants' purposeful interjection into the forum state's affairs;

2.      the burden on the defendant of defending in the forum;

3.      the extent of conflict with the sovereignty of the defendants' state;

4.      the forum state's interest in adjudicating the dispute;

5.      the most efficient judicial resolution of the controversy;

6.      the importance of the forum to the plaintiff's interest in convenient and effective relief; and

7.      the existence of an alternative forum.

*Id*. at 1487-88.

No factor is dispositive in itself, and the court must balance all seven. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Defendants' arguments can be summarized as asserting that the exercise of jurisdiction would be unreasonable, in part because some defendants are residents of France and litigation in Oregon would be burdensome. Relatedly, defendant Knight-Jadczyk argues that jurisdiction in Oregon would be unreasonable because she is a resident of France, has never been to Oregon, and has no connection with Oregon. She also challenges plaintiff's relationship to Oregon, contending that plaintiff maintains a presence on the Internet more than any tangible connection to Oregon. These arguments are rejected. Plaintiff alleges that defendant Knight-Jadczyk, the Vice President of QFG, committed intentional tortuous acts aimed at plaintiff, which is

undeniably based in Oregon.  Plaintiff is not precluded from pursuing its claims simply because the alleged wrongful conduct occurred on the Internet.  The seven factors are addressed below:

Defendants' explicit identification of plaintiff in the dialogue it prompted and fostered on the Internet mounts to a purposeful interjection into Oregon.

Defendants have failed to show that the alleged burden upon defendants of litigating this action in Oregon is significant.

There is no showing that litigating in Oregon would conflict with the sovereignty of any other jurisdiction.

Oregon's interest in protecting its residents from the conduct that plaintiff alleges defendants committed against plaintiff is not outweighed by any purported interest that any other venue might have in the case.

The efficiency of resolving this matter in Oregon is unchallenged.

Oregon is, however, an important venue for purposes of providing plaintiff convenient and effective relief.

And, finally, the existence of another possible alternative forum fails to influence this court's evaluation of reasonableness.

Defendants' arguments fail to overcome the presumption of reasonableness established when plaintiff satisfied the first two elements of the specific, personal jurisdiction test.  The court has examined the arguments, declarations and affidavits submitted, and concludes that the balance of the seven factors in the third step favors the exercise of jurisdiction.

Having considered the relevant factors, the court concludes that, on balance, exercising specific jurisdiction in Oregon is reasonable.  Accordingly, defendants' motions seeking to dismiss this action for lack of jurisdiction are denied.

11  -- OPINION AND ORDER

2.        **Other motions**

There are several other pending issues that are related to defendants' substantive motions to strike the Amended Complaint pursuant to Oregon's Anti-SLAPP statute (SLAPP motions). The motions related to setting or amending a discovery schedule are denied as moot, with leave to renew following this court's pending disposition of the SLAPP motions. These moot motions include plaintiff's Joint Motion for Stay of Discovery [21] and plaintiff's Motion to Obtain Limited Discovery and Stay Defendants' Special Motion to Strike [34].

Defendants also advance three alternative motions seeking dismissal in the event that the court declines to adopt defendants' proposed application of the Anti-SLAPP statute. These Motions to Dismiss for Failure to State a Claim [18] [23] [29] are denied as unripe, with leave to renew.

The court notes that defendants QFS and SOTT also argue that they should be dismissed from this action on grounds that they are "non-entities." This aspect of their motion to dismiss [29] is also denied. As with the other motions that are dismissed for mootness, these motions may be refiled if appropriate after a final discovery schedule is set.

**CONCLUSION**

This court concludes that QFG's Motion to Dismiss for Lack of Jurisdiction [15]; Laura Knight-Jadczyk's Motion to Dismiss for Lack of Personal Jurisdiction [24]; and QFS and SOTT's Motion to Dismiss for Lack of Personal Jurisdiction [32] must be denied. A ruling regarding the possible applicability of the Anti-SLAPP statute and – if necessary – setting a final discovery schedule will issue separately. Accordingly, Plaintiff's Joint Motion for Stay of Discovery [21] and Plaintiff's Motion to Obtain Limited Discovery and Stay Defendants' Special Motion to

Strike [34] are denied with leave to renew.  Defendants' Motions to Dismiss for Failure to State a

Claim [18] [23] [29] are also denied with leave to renew.

IT IS SO ORDERED.

Dated this  18   day of November, 2008.


       /s/ Ancer L. Haggerty
        Ancer L. Haggerty
        United States District Judge