UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HIGHER BALANCE, LLC, an Oregon
limited liability company, dba the
HIGHER BALANCE INSTITUTE,

       Plaintiff,                               Civil No. 08-233-HA

       v.                                       OPINION AND ORDER

QUANTUM FUTURE GROUP, INC., a
California corporation, QUANTUM FUTURE
SCHOOL, SIGNS OF THE TIMES, and
LAURA KNIGHT-JADCZYK,

       Defendants.

HAGGERTY, Chief Judge:

      Plaintiff Higher Balance LLC, doing business as Higher Balance Institute (plaintiff or

HBI), asserts claims for libel, false light, intentional interference with business relationships, and

1 -- OPINION AND ORDER

intentional interference with prospective economic advantage against defendants Quantum Future Group (QFG), Quantum Future School (QFS), Laura Knight-Jadczyk (Knight-Jadczyk), and Signs of the Times (SOTT). These claims stem from postings published on an Internet forum beginning on May 2, 2006, and continuing until December 6, 2007. Defendants make a special motion to strike these claims.

**FACTUAL BACKGROUND**

Plaintiff is an Oregon-based company that provides products to help "its customers relieve stress, reduce anxiety, and achieve emotional balance and spiritual enlightenment though meditation techniques." Pl.'s Am. Compl. ¶ 11. Plaintiff was co-founded by Eric Pepin (Pepin). Pl.'s Opp'n to Dfts.' Mot. to Dismiss at 2.

Defendant QFG is a California corporation that "promotes the study of ideas and research in a variety of scientific and sociocultural fields." QFG's Mem. in Supp. of Special Mot. to Strike Compl. (Mem. in Supp.) at 4 (citing Declaration of Laura Knight-Jadczyk in Supp. of Dfts.' Special Mot. to Strike Compl. (Knight-Jadczyk Decl.).

Defendant Laura Knight-Jadczyk (Knight-Jadczyk) is the vice president of QFG.

Defendant QFS is described as a think-tank for academics and individuals and is operated by QFG. QFG's Mem. in Supp. at 4.

Defendant SOTT is a website that is edited and moderated by Knight-Jadczyk. *Id*. She pays for SOTT's expenses and is reimbursed by QFG, and the Internet domain name "SOTT.net" is registered to Knight-Jadczyk's husband, Arkadiusz Jadczyk. *Id*. The website provides discussion forums in which Internet users post commentary and analysis. *Id*.

On May 2, 2006, an anonymous poster on SOTT initiated an inquiry seeking information about HBI and Pepin. Knight-Jadczyk Decl. at 5-7, Para. 11 (citing Ex. A-I). A "forum thread"

discussion ensued. Several posters praised HBI and its teachings. Others questioned its motives and operations. *Id*. at Para. 12.

On June 11, 2007, an anonymous user posted two articles published in The Oregonian newspaper that addressed criminal charges brought against Pepin. The articles noted that Pepin had been acquitted by bench trial of two counts of second-degree sexual abuse, four counts of third-degree sexual abuse, and one count of using a child in a display of sexually explicit conduct. One post quoted the article as reporting that "[the trial judge] said that it was 'probable that the conduct alleged in all counts occurred.'" QFG's Mem. in Supp. at 7.

In a subsequent response to the posting, defendant Knight-Jadczyk republished portions of the articles and added commentary. Knight-Jadczyk and other forum moderators and anonymous users continued to discuss HBI and Pepin in additional postings.

In December 2007, HBI's vice president contacted Knight-Jadczyk. She was asked to "immediately remove any thread, story or article, regardless of content, mentioning Eric Pepin or Higher Balance Institute" and "actively moderate to remove any mention of Eric Pepin [or] Higher Balance Institute in the future."

Instead of assenting to these requests, Knight-Jadczyk posted the communication on the forum. However, the title of the forum page on which the discussions at issue had taken place was changed from "Channel Watch & New Age COINTELPRO >> Eric Pepin – Higher Balance Institute – Front for Pedophiles?" to "Channel Watch & New Age COINTELPRO >> Eric Pepin – Higher Balance Institute – Discussion." Knight-Jadczyk Decl. at Para. 19-20 (citing Ex. I).

**CLAIMS**

On February 25, 2008, plaintiff HBI filed a Complaint in this court against defendants. On March 13, 2008, plaintiff filed an Amended Complaint, asserting claims for (1) defamation-

3 -- OPINION AND ORDER

libel, (2) false light, (3) intentional interference with business relationships, and (4) intentional interference with prospective economic advantage.

## QUESTIONS PRESENTED

On April 25, 2008, defendant QFG filed a Special Motion to Strike pursuant to Oregon Revised Statutes (ORS) § 31.150.  On May 19, 2008 defendants Knight-Jadczyk, QFS, and SOTT also filed special motions to strike and joined defendant QFG's motion.  Defendants' motions invoke Oregon's "Anti-Strategic Lawsuit Against Public Participation" (anti-SLAPP) statutes, and seek to dismiss plaintiff's claims.

## STANDARDS

Oregon Revised Statutes §§ 31.150-31.155 comprise Oregon's anti-SLAPP statutes. *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 837 n.7 (9th Cir. 2001).  The purpose of statutes such as these has been described as the "protection of individuals from meritless, harassing lawsuits whose purpose is to chill protected expression." *Id.*  Under these statutes, a defendant may make a special motion to strike a claim in a civil action that arises out of:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue of an issue of public interest.

ORS § 31.150(2).

4 -- OPINION AND ORDER

When determining whether to grant such a motion, "the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS § 31.150(4).

Defendants in federal court may avail themselves of applicable anti-SLAPP statute provisions. *Englert v. MacDonell*, Civil No. 05-1863-AA, 2006 WL 1310498, at *7 (D. Or. May 10, 2006); *Gardner v. Martino*, Civil No. 05-769-HU, 2005 WL 3465349, at *3 (D. Or. Sept. 19, 2005); *see also Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005).

To succeed, a defendant must first make a *prima facie* showing that the claims to which the motion is directed arise out of the categories described in ORS § 31.150(2). *See* ORS § 31.150(3). The burden then shifts to the plaintiff to show a probability that the plaintiff will prevail on the claims by presenting substantial evidence to support a *prima facie* case. *Id.* If the plaintiff fails to meet this burden, the court must grant the motion and enter a judgment of dismissal without prejudice. ORS § 31.150(1).

## DISCUSSION

Defendants contend that plaintiff's claims should be stricken pursuant to Oregon's anti-SLAPP statute because (1) plaintiff's claims arise out of conduct described in the statute, and (2) plaintiff cannot establish with substantial evidence a probability that it will prevail. The court concludes that the anti-SLAPP statutes compel dismissal of all defendants. Plaintiff cannot establish a probability of success on plaintiff's claims for libel, false light, and intentional interference with economic relations as to either Knight-Jadcyzk or the other defendants.

### 1. Defendants' burden under the anti-SLAPP statutes

As noted above, a defendant must first make a *prima facie* showing that the claims to which the motion is directed arise out of the categories described in ORS § 31.150(2). *See* ORS § 31.150(3). Defendants argue that plaintiff's claims arise out of the categories listed at ORS §

5 -- OPINION AND ORDER

31.150(2)(c): a "written statement . . . presented . . . in a place open to the public or a public forum in connection with an issue of public interest." In response, plaintiff disputes that the challenged statements occurred in a public forum or were of public interest.

### A.   Public forum

Plaintiff's claims arise from several postings to the SOTT.net forum page. As described above, the postings discussed Pepin's criminal trial and acquittal, as well as HBI's motives and operations. Defendants assert that the SOTT.net forum page is a modern equivalent of a public forum. This court agrees.

Website forum pages allowing users to read and post comments free of charge constitute a public forum under the anti-SLAPP statute. *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 638 (Cal. App .2001) (quoting *Damon v. Ocean Hills Journalism Club,* 102 Cal. Rptr. 209-210 (Cal. App. 2000)) (finding that websites accessible free of charge to any member of the public are a public forum because they are "open to the public where information is freely exchanged"); *see also Global Telemedia International, Inc. v. Doe*, 132 F. Supp.2d 1261, 1264 (C.D. Cal.2001)(applying anti-SLAPP law to claims arising out of postings to chat-rooms that were "open an free to anyone who wants to read the messages.").

### B.   Issue of public interest

Defendants argue that the forum-page posts concerning HBI's teachings and products and the posts concerning Pepin's criminal charges constitute matters of public interest within the meaning of ORS § 31.150(2)(c). Defendants assert that the statements concern the quality of consumer goods and services.

Plaintiff responds that the specific statements in the postings about HBI are not connected to a matter of public interest and are of interest only to a limited, definable portion of

the public. Plaintiff argues that the statements did not occur in an ongoing controversy, dispute, or discussion, and so cannot be matters of public interest.

No Oregon appellate court has interpreted "an issue of public interest" as referenced in ORS § 31.150(2)(d), nor does the statute itself define the term. "The term has been applied broadly, however, in Oregon state and federal cases." *DuBoff v. Playboy Enterprises Inter'l Inc.*, Civil No. 06-358-HA, 2007 WL 1876513, at *8 (D. Or. June 26, 2007) (adopting a broad definition of public interest in concluding that an article describing an Internet dispute to be a matter of public interest).

In *Card v. Pipes*, 398 F. Supp.2d 1126 (D. Or. 2004), the plaintiff brought a claim for defamation based on statements published in a newspaper and later on an Internet website stating that he had made anti-Israel statements in the classroom. The court held that the plaintiff's claims were subject to the defendants' anti-SLAPP motion to strike. *Id.* at 1136 (plaintiff's claims "arise out of written statements presented in a place open to the public or public forum (website, newspaper) in connection with an interest of public concern (alleged political activism and bias in the college classroom)").

Similarly, in *Gardner,* the court dismissed the plaintiff's claim for false light, defamation, intentional interference with economic relations, and intentional infliction with prospective economic advantage pursuant to ORS § 31.150. The court held that the statements at issue – comments on a national talk-radio show about a single consumer's dealings with an Oregon retailer – constituted statements about a public issue or an issue of public concern. *Gardner*, 2005 WL 3465349 at *7. In so concluding, the *Gardner* court noted that state trial courts in Oregon have interpreted "issue of public interest" broadly. *Id*. The *Gardner* court referred to *Thale v. Business Journal Pubs., Inc.*, Mult. Co. Case No. 0402-02160 (applying the anti-SLAPP statute to claims arising from statements published in an article about the plaintiff's

7 -- OPINION AND ORDER

resignation from InFocus Corporation and some of the business decisions the plaintiff made while employed there) and *Kurdock v. Electro Scientific Indus., Inc.,* Mult. Co. Case No. 0406–05889 (concluding that statements made by employer to other employees and shareholders concerning plaintiff's termination are statements made on "an issue of public interest"). The court stated:

> Just as persuasive are the California decisions, interpreting California's analogous anti-SLAPP statute, which have broadly interpreted the "public issue" or "public interest" standard. *E.g. Traditional Cat Ass'n, Inc. v. Gilbreath*, 13 Cal. Rptr. 3d 353, 356 (Cal. App. 2004) (statements concerning a dispute among different factions of cat breeders were matters of public interest for purposes of anti-SLAPP statute because they "concerned matters of public interest in the cat breeding community"); [*Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr.2d 108, 115 (Cal. App. 2002)] (discussion on radio talk show regarding participant on television program called "Who Wants to Marry a Millionaire" was subject to anti-SLAPP statute because the subject of the radio discussion, a television show featuring "the sort of person willing to meet and marry a complete stranger on national television," fell within the statutory criterion of "an issue of public interest.").

*Gardner*, 2005 WL 3465349 at *5.

More recently, in *Englert v. MacDonell*, the court held that comments made by a group of forensic scientists regarding an ethics complaint against a fellow scientist satisfied the "issue of public interest" requirement of Oregon's anti-SLAPP statute. 2006 WL 1310498, at *8. The court noted that while *Thale*, *Gardner*, and *Card* all involved publication by media, and were therefore factually distinguishable, the statements at issue in *Englert* "encourage[d] investigation of ethics violations which improve the professional standards, particularly where courtroom experts are concerned." *Id.*

Here, plaintiff insists that the forum postings are of interest only to a limited, definable portion of the public. Under these circumstances, plaintiff argues, the challenged statements should be deemed not a matter of public interest because they did not occur in the context of an ongoing controversy, dispute, or discussion. *See Du Charme v. Int'l Broth. of Elec. Workers,*

8 -- OPINION AND ORDER

*Local 45*, 1 Cal. Rptr. 501, 510-11 (Cal. App. 2003) (comments about a fired employee on a labor union's website were not an issue of ongoing concern, and therefore, not an issue of public interest).

      Plaintiff's argument is rejected. The statute provides that a defendant may move to strike a claim that arises out of any "written statement . . . presented . . . in a place open to the public or a public forum *in connection with* an issue of public interest." ORS § 31.150(2)(c) (emphasis added). The statements at issue were posted to an online forum discussing the quality of HBI's products and services in light of Pepin's criminal proceedings as reported by The Oregonian newspaper. Plaintiff does not (and cannot) contend that the controversy surrounding Pepin's trial is not a matter of public interest. Pepin developed the meditation techniques that HBI markets, incorporates into products, and sells. Although plaintiff asserts that Pepin plays no role in daily operations at HBI, its services and products are inextricably tied to Pepin's teachings and abilities. There is no doubt that the statements here were made in connection with an issue of public interest, specifically, the quality of HBI's products and services developed by Pepin. This conclusion is consistent with the broad definition of public interest applied by other federal courts as well as by Oregon's state courts.

      **2.     Plaintiff's burdens under the anti-SLAPP statutes**

      As noted above, after defendants have met their initial burden for advancing their reliance upon the anti-SLAPP statute, the plaintiff may defeat a motion to strike by establishing that the plaintiff's claims enjoy a probability of success by presenting substantial evidence to support a *prima facie* case of these claims. ORS § 31.150(3). "[T]he plaintiff cannot simply rely on the allegations in the complaint . . . but must provide the court with sufficient evidence to permit the court to determine whether there is a probability that the plaintiff will prevail on the claim." *Gardner*, 2005 WL 3465349 at * 8 (citing *ComputerXpress*, 113 Cal. Rptr. 2d at 641).

9 -- OPINION AND ORDER

"Because it goes beyond the pleadings to examine the evidence in support of the plaintiff's claims, a special motion to strike bears many of the characteristics of a motion for summary judgment." *Staten v. Steel*, 191 P.3d 778, 788 (Or. App. 2008). However, plaintiff's "burden is potentially much heavier than merely establishing the existence of a disputed issue of fact." *Id*.

To determine if plaintiff has established a *prima facie* case that sufficiently shows that there is a probability that plaintiff will prevail, the court "may need to weigh the evidence, something that it cannot do on a motion for summary judgment." *Id*.

### A.      Communications Decency Act

All defendants except Knight-Jadczyk argue that plaintiff cannot show a probability of success because these defendants are immunized from liability from third-party forum posts by the Communications Decency Act of 1996 (CDA). Defendant Knight-Jadczyk concedes that the CDA does not prohibit claims against her based on her own postings.

Plaintiff responds that the CDA does not shield defendants from liability because the allegedly defamatory comments were made by defendants themselves.[1] Plaintiff argues that

---

1      On December 5, 2007, a poster designated as a "Moderator" and identified as "beau" posted, in part, the following:
> The authorities just can't create a person who claims to have been sexually abused by Pepin. Something happened between the two of them, and something fishy is going on at the Higher Balance Institute. That much is clear. And THAT is the reason for the discussion here. You don't like it? Go somewhere else and complain.

Colton Decl. in Supp. of Pl.'s Opp'n To Dfts..' Motions, Ex. 6 at 14.

On November 30, 2007, a poster designated as a "Moderator" and identified as "Ryan" posted, in part, the following:
> Just because you were not molested by Pepin doesn't mean that others who claim to be were not. And if you're a good looking guy, I'd suggest that you be very careful in your dealings with Pepin and HBI, lest you wind up in a similar position to Mr[.] Smith.

Colton Decl. in Supp. of Pl.'s Opp'n To Dfts.' Motions, Ex. 6 at 4.

10  -- OPINION AND ORDER

QFG, QFS, and SOTT are instruments and alter egos of Knight-Jadczyk and that forum posters "beau," "Ryan," and "anart" are employees or agents of QFG, QFS, and SOTT.

Section 230 of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C.§ 230(c)(1).  The statute defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet [.]"  47 U.S.C. § 230(f)(2).  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

Section 230(e)(3) limits liability for postings on the Internet and other computer networks.  It dictates that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).

Immunity under Section 230 attaches when (1) the defendant is a provider or user of an interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; and (3) the statement or information at issue is provided by another information content provider.  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

---

On December 6, 2007, a poster designated as a "Moderator" and identified as "anart" posted, in part, the following:
> If the information provided by a source, in this case, HBI, leads people more deeply into sleep and self-calming, or if it does anything other than help to reveal the objective truth of this reality while claiming to promote 'personal or spiritual growth' – then it is, for all intents and purposes, cointelpro.

Colton Decl. in Supp. of Pl.'s Opp'n To Dfts.' Motions, Ex. 6 at 20.

11 -- OPINION AND ORDER

The parties do not dispute that defendants are providers or users of an interactive computer service, or that plaintiff's claims treat the defendants as publishers or speakers of information. However, the parties disagree as to the third element required for Section 230 immunity: whether the statements at issue were provided by another content provider.

Plaintiff argues that "beau," "Ryan," and "anart" (hereinafter moderators) are employees or agents of QFG, QFS, and SOTT, alleging that they are QFS staff members compensated by QFG. Therefore, plaintiff contends, these moderators are not "another information content provider" under Section 230.

Defendants assert that the moderators are unpaid volunteers who do not represent the opinions of defendants. Accordingly, the moderators should be construed as "other providers" and defendants should be immune from liability for third-party forum posts by under the CDA.

### B. Postings by forum moderators

Plaintiff has produced evidence showing that QFS staff members are responsible for providing content for the SOTT website. Hughey Decl. in Supp. of Pl.'s Opp'n to Dfts.' Motions, ¶ 3, Ex. B. However, plaintiff has failed to show that the SOTT forum moderators are QFS staff members. Without this evidentiary link, plaintiffs have not shown that the forum moderators are employees or agents of QFG, QFS, and SOTT.

By adopting a "relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider,'" CDA immunity is viewed as "quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (footnotes omitted). "Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue." *Id.* this court concludes that defendants QFG, QFS,

and SOTT are immunized by the CDA from postings made by forum moderators because they are "another information content provider."

Therefore, under the anti-SLAPP statutes, the statements made by forum moderators "beau," "Ryan," and "anart" must be stricken from plaintiff's Complaint. Plaintiff has not established by substantial evidence that there is a probability that it will prevail on its claims based on postings made by the forum moderators.

### C.     Postings by Knight-Jadczyk

Plaintiff attempts to show a probability of prevailing on its claims against the other defendants by establishing that they are not immunized by Section 230 the CDA because they are alter egos of Knight-Jadczyk. If defendants are alter egos, plaintiff argues, then Knight-Jadczyk's postings were not made by "another information content provider" as contemplated in when providing immunity pursuant to Section 230. If that is so, the other defendants could be viewed as liable for Knight-Jadczyk's statements.

Plaintiff advances several allegations that defendants are alter egos and instrumentalities of each other. These allegations include:

* Defendant Knight-Jadczyk is the vice president of defendant QFG;

* Defendant QFG operates defendant QFS;

* Defendant QFS has staff members who are responsible for providing the content for the SOTT website;

* Defendant Knight-Jadczyk finances SOTT.net's operations and is reimbursed using QFG funds; she serves as an administrator, editor, contributor and moderator of SOTT.net and polices the content posted there;

* The SOTT.net domain name is registered to Knight-Jadczyk's husband, who serves as the president of QFG;

* Defendant QFG finances defendant Knight-Jadczyk and other QFS participants;

13 -- OPINION AND ORDER

* The QFS facility is located at the same residential compound at which defendant Knight-Jadczyk resides and from which QFG and SOTT operate;

* Defendant QFG finances the living expenses for those residing at the compound;

* Defendant QFG uses SOTT.net to finance itself;

* Defendant QFG's 2004, 2005 and 2006 tax exemption forms to the Internal Revenue Service indicate that the QFG volunteer staff maintained daily publications on the web;

* A notice at the "home page" for SOTT.net states: "Emails sent to Signs of the Times, Ark, Laura, or Cassiopaea become the property of Quantum Future Group, Inc and may be republished without notice."

To hold a corporation liable as an alter ego, a plaintiff must prove: (1) another entity actually controlled (or was under common control with) the corporation; (2) the other entity used its control over the corporation to engage in improper conduct; and (3) as a result of the improper conduct, the plaintiff was harmed. *State ex rel. Neidig v. Superior Nat'l Ins. Co.*, 173 P.3d 123, 136 (Or. 2007). A corporation may be found to be an alter ego or instrumentality "to prevent one person or corporation's wrongful use of a corporation that it controls to harm third parties . . . and to prevent affiliated corporations from being used in a similar way." *Id*.

Actual control or common control consists "not merely [of] majority or complete stock control, but complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own[.] *Id*. at 136 n. 16 (quoting 1 Fletcher Cyclopedia of the Law of Corporations § 41.10, 143-47 (2006 revised volume)). "[P]otential control through stock ownership and identity of corporate officers is not sufficient." *Id*. at 137.

The "control" contemplated by the first prong of the test "is not simply potential control or control of general operations, but actual control over the specific conduct that led to the

plaintiff's harm; therefore, even when affiliated corporations share directors, officers, and facilities, the control required to pierce the corporate veil is not necessarily present." *Id*.

This court rejects plaintiff's assertions that defendants are alter egos. Although plaintiff provides evidence that defendants are *associated with* Knight-Jadczyk through financial ties, location, and Knight-Jadczyk's conduct, plaintiff fails to show via substantial evidence that QFG, QFS, and SOTT are mere instrumentalities or alter egos of Knight-Jadczyk. Notwithstanding significant links between Knight-Jadczyk, QFG, QFS, and SOTT that indicate some measure of control over general operations, plaintiff fails to show control over the specific conduct at issue that is required to find QFG, QFS, and SOTT alter egos or instrumentalities of Knight-Jadczyk.

This court concludes that the postings by Knight-Jadczyk constitute information provided by "another content provider" under Section 230 of the CDA. Therefore, defendants SOTT, QFG, and QFS are immunized against those postings by the CDA. Because plaintiff cannot show a probability of prevailing on its claims against QFG, QFS, and SOTT, involving either the moderators' postings or Knight-Jadczyk's postings, the applicable anti-SLAPP statutes compel that the claims against these defendants are stricken.

### 3. No probability of success as to defendant Knight-Jadczyk individually

Defendant Knight-Jadczyk concedes that the CDA does not prohibit claims against her based on her own postings. Nevertheless, plaintiff cannot show a probability of succeeding on its claims against Knight-Jadczyk individually.

On November 4, 2007, Knight-Jadczyk re-posted portions of The Oregonian newspaper articles concerning Pepin's arrest and acquittal and posted her own commentary which included, in part, the following: "It's really starting to look like this Eric Pepin and his Higher Balance Institute is merely a COINTELPRO and a front for pedophilia." Colton Decl. in Supp. of Pl.'s Opp'n To Defs.' Motions, Ex. 4 at 2.

15 -- OPINION AND ORDER

On that same date, Knight-Jadczyk also responded to a post from another forum user who asserted that HBI serves a valid purpose to those seeking answers. Knight-Jadczyk posted, in part, the following:

> Horse hockey. There is nothing there except a pathological deviant and his deviant followers conning the public. There's nothing at all about "waking up" there. For example, most meditation will do little but put you back to sleep. It's an act of self-calming and falling into confluence with the psychopathic reality.

Colton Decl. in Supp. of Pl.'s Opp'n To Defs.' Motions, Ex. 5 at 2.

Plaintiff's claims against Knight-Jadczyk, therefore, rely upon her assertions that "HBI is a 'front for pedophilia;' HBI is a "cointelpro" organization; HBI markets nothing more than an act of "falling into confluence with a psychopathic reality;" and HBI is "conning" the public. Pl.'s Am. Compl. ¶ 23.

### A.    Libel/Defamation claim

Plaintiff maintains that Knight-Jadczyk's statements are false and defamatory.[2] A defamatory statement is a factual assertion that subjects another to "hatred, contempt or ridicule" or tends "to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Reesman v. Highfill*, 965 P.2d 1030, 1034 (Or. 1998) (citations omitted). Whether a statement is capable of a defamatory meaning is a question for the court. *Id*. When deciding whether a statement is capable of a defamatory meaning, the court must look to "the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).

---

2    The court notes that plaintiff focuses its argument upon the "front for pedophilia" posting, and does not advance specific arguments regarding Knight-Jadczyk's other posting. The court has conducted an independent review of Knight-Jadcyzk's other comments and concludes that the following analysis is applicable to all of her postings.

To be actionable, a statement must be not only defamatory, but also false. *Reesman*, 965 P.2d at 1033. Therefore, statements of opinion are generally not actionable. *Gardner*, 2005 WL 3465349 at * 8 (citing *Reesman*, 965 P.2d at 1035). "[S]tatements of opinion are protected by the First Amendment unless they 'imply a false assertion of fact.'" *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).

A court evaluates whether a statement implies a factual assertion by evaluating the totality of the circumstances in which it was made. *Underwager*, 69 F.3d at 366. To determine whether a statement implies an assertion of objective facts or protected opinion, a court examines: (1) "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work"; (2) "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation"; and (3) "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Id*.

This court concludes that Knight-Jadczyk's statements constitute protected opinion. In so concluding, the court follows *Underwager* and first examines her postings in their broad context, considering the general tenor of the commentary. The mere fact that her comments were posted on an Internet forum is not dispositive on the question, but the setting and the format of the commentary are factors to be considered when evaluating the statements' "broad context." The broad context of Knight-Jadczyk's statements suggests that she was publishing opinions critical of plaintiff.

The teachings of *Ungerwager* direct the court to examine the *specific* context and content of the statements and analyze the extent of figurative or hyperbolic language used. Knight-

17 -- OPINION AND ORDER

Jadczyk stated that "[i]t's really starting to look like" plaintiff and Pepin were a front for pedophilia. The reasonable expectations of the audience would be that Knight-Jadczyk was expressing opinion.

Finally, the court examines whether the postings are sufficiently factual to be susceptible of being proven. This factor also supports concluding that the postings constitute protected opinion. Proof would refer to what "it's really starting to look like" regarding plaintiff, and that is not susceptible to empirical testing.

Knight-Jadczyk's second posting, which begins with "Horse hockey" and asserts with some hyperbole that plaintiff "and his deviant followers" were "conning the public" before closing with obvious opinion from Knight-Jadczyk that " most meditation will do little but put you back to sleep."  As noted already, this second posting is no more actionable than the first.

Because Knight-Jadczyk's postings cannot be viewed as defamatory, plaintiff cannot make a showing of probable success that defeats the applicability anti-SLAPP statutes.

      **B.**     **False Light**

Plaintiff's false light claim arises from the same statements as the libel claim. Therefore, the same defenses apply. *See Cort v. St. Paul Fire & Marine Ins. Cos., Inc.*, 311 F.3d 979, 987 (9th Cir. 2002) ("When an invasion of privacy claim rests on the same allegations as the claim for defamation, the former cannot be maintained as a separate claim if the latter fails as a matter of law") (internal citation omitted); *Partington v. Bugliosi*, 56 F.3d 1147, 1160 (9th Cir. 1995) ("we reject Partington's false light claims regarding the two contested statements … for the same reason that we rejected his defamation claims based on those statements: both statements are protected by the First Amendment, regardless of the form of tort alleged"). Accordingly, this court strikes plaintiff's false light claim for the same reasons as the libel claim, discussed above.

      **C.**     **Intentional Interference With Economic Relations**

18 -- OPINION AND ORDER

Plaintiff's claims for intentional interference with economic relations and intentional interference with prospective economic relations arise from the same statements as its libel and false light claims.  Plaintiff alleges that Knight-Jadczyk published false statements that were motivated by malice and bad faith and diminished the esteem, respect, goodwill, and confidence in which plaintiff id held by its customers and prospective customers.

A claim for intentional interference with economic or prospective economic relations consists of the following elements: (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.  *Allen v. Hall*, 974 P.2d 199, 202 (Or. 1999).

Assuming without deciding that plaintiff has produced substantial evidence as to elements (1)-(3), (5), and (6), it fails to present evidence to meet the fourth element – that interference with its business relationships was accomplished through improper means for an improper purpose.

To satisfy the fourth element, a plaintiff must show that the "interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Allen v. Hall*, 974 P.2d 199, 204 (Or. 1999) (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Or. 1978)).  Improper means may include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Top Service*, 582 P.2d at 1371 n.11.

Plaintiff argues that defendants actions were improper because they published defamatory statements.  As discussed above plaintiff fails to prove that Knight-Jadczyk's postings are

19  -- OPINION AND ORDER

defamatory. Because plaintiff cannot establish a probability that it will prevail by presenting substantial evidence to support a *prima facie*, the court strikes plaintiff's claims for intentional interference with economic relations and intentional interference with prospective economic relations.

**CONCLUSION**

For the reasons provided, QFG's Special Motion to Strike Complaint [11], Knight-Jadczyk's Special Motion to Strike Complaint [28], and QFS and SOTT's Special Motion to Strike Complaint [33] are granted. Counsel for the parties shall confer and file a Joint Status Report proposing the appropriate further disposition of this action. The Report shall be filed by January 23, 2009.

IT IS SO ORDERED.

Dated this  18  day of December, 2008.

                                          /s/ Ancer L. Haggerty
                                            Ancer L. Haggerty
                                     United States District Judge