UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HIGHER BALANCE, LLC, an Oregon
limited liability company, dba the
HIGHER BALANCE INSTITUTE,

        Plaintiff,                                                    Civil No. 08-233-HA

        v.                                                               OPINION AND ORDER
                                                        REGARDING AN AWARD
QUANTUM FUTURE GROUP, INC., a                                   OF FEES
California corporation, QUANTUM FUTURE
SCHOOL, SIGNS OF THE TIMES, and
LAURA KNIGHT-JADCZYK,

        Defendants.

_____

HAGGERTY, District Judge:

      On December 18, 2008, this court granted defendants' Special Motions to Strike the

Complaint brought pursuant to Oregon Revised Statutes (ORS) 31.150-31.155, which comprise

Oregon's "Anti-Strategic Lawsuit Against Public Participation" (anti-SLAPP) statutes.  *See*

Opinion and Order [64] issued December 18, 2008.  After this ruling, the parties jointly

acknowledged that the only remaining issue in this matter is resolving defendants' request for

1 -- OPINION AND ORDER

attorney fees and costs.  *See* Joint Status Report [66] filed January 23, 2009.  Defendants

subsequently moved for an award of fees and costs.  This Motion [67] is resolved herein.

## BACKGROUND

This court's prior rulings have provided a thorough background of this litigation, and the

background need be only summarized here.  Plaintiff Higher Balance LLC, doing business as

Higher Balance Institute (plaintiff or HBI), asserted claims for libel, false light, intentional

interference with business relationships, and intentional interference with prospective economic

advantage against defendants Quantum Future Group, Quantum Future School, Laura Knight-

Jadczyk (Knight-Jadczyk), and Signs of the Times.  Plaintiff's claims arose from postings

published on an Internet forum between May 2, 2006, and December 6, 2007.  Defendants'

special motions to strike these claims were granted.

## MOTION FOR FEES

Defendants have billed a total of approximately 655 hours and seek an award totaling

$135, 536.30.[1]  Plaintiff challenges over 430 hours claimed as billable by defendants, and

concludes that "defense counsel billed a grossly excessive amount of time on the motion and

defendants should be awarded significantly less than $37,500."  Pl.'s Opp'n to Dfts' Mot. for Att'y

Fees and Costs (Opp'n.) at 9-10.  Plaintiff primarily targets hours assessed for work indirectly

related to the anti-SLAPP motion, 222 billable hours defense counsel attribute to researching and

preparing the anti-SLAPP motion, and an additional 62 hours that senior defense counsel

Stephen Kaus billed at a rate of $237.50 per hour for researching and preparing an unsuccessful

jurisdictional motion.

---

1.      Plaintiff calculated defense counsel's total billable hours at 624.8, Opposition at 1, and
        defendants calculated a final bill of $135,536.30 after including charges for the fees and
        costs related to the fee motion.  Am. (Second) Decl. of Stephen Kaus in Supp. of Dfts'
        Mot. for Att'y Fees and Costs (Second Kaus Decl.) at 2.

## STANDARDS

In diversity cases, attorney fee awards are governed by state law. *Gardner v. Martin*, No. 05-CV-769-HU, 2006 WL 2711777, *2 (D. Or. September 19, 2006). In Oregon, defendants who prevail on special motions to strike brought pursuant to the anti-SLAPP statutes "shall be awarded reasonable attorney fees and costs." ORS 31.152(3). Accordingly, the issue presented in such motions is calculating the amount of the award, not whether a defendant is entitled to an award. *Northon v. Rule*, 494 F. Supp. 2d 1183, 1184 (D. Or. 2007) (citing *Gardner*, 2006 WL 2711777, at *3).

Although fee awards are mandatory following a successful anti-SLAPP statute motion to strike, such motions are to be treated similarly to a motion to dismiss. ORS 31.150(1). Such motions are intended as "a tool to dispose of lawsuits as a matter of law, early in the proceeding, before a great deal of time and money has been expended" and before discovery is undertaken. *Gardner*, 2006 WL 2711777, at *7 (citing ORS 31.150(1), 31.152(2)).

Factors considered in calculating the proper award are listed under ORS 20.075(1) and (2). Under ORS 20.075(1), factors for evaluating the reasonable amount to award include:

(a)    The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b)    The objective reasonableness of the claims and defenses asserted by the parties.

(c)    The extent to which an award of attorney fees in the case would deter others from asserting good faith claims or defenses in similar cases.

(d)    The extent to which an award of attorney fees in the case would deter others from asserting meritless claims and defenses.

(e)    The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f)    The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g)     The amount that the court has awarded as a prevailing party fee under ORS
        20.190.

(h)     Such other factors as the court may consider appropriate under the circumstances
        of the case.

        Under ORS 20.075(2), factors include:

(a)     The time and labor required in the proceeding, the novelty and difficulty of the
        questions involved in the proceeding, and the skill needed to properly perform the
        legal services.

(b)     The likelihood, if apparent to the client, that the acceptance of the particular
        employment by the attorney would preclude the attorney from taking other cases.

(c)     The fee customarily charged in the locality for similar legal services.

(d)     The amount involved in the controversy and the results obtained.

(e)     The time limitations imposed by the client or the circumstances of the case.

(f)     The nature and length of the attorney's professional relationship with the client.

(g)     The experience, reputation and ability of the attorney performing the services.

(h)     Whether the fee of the attorney is fixed or contingent.

## ANALYSIS

Plaintiff acknowledges that defendants are entitled to a fee award, but contend that
defendants' requests are grossly excessive and totally unreasonable.  Accordingly, this court first
examines the "reasonableness" factors enumerated under ORS 20.075(1).

There are no substantiated allegations that plaintiff engaged in conduct that was reckless,
willful, malicious, or in bad faith.  Defense counsel's vituperative characterization of plaintiff as
a "wealthy guru who filed this meritless action just to harass a group of people half way around
the world" appears unwarranted.  Reply at 1.  The record reflects that prior to initiating litigation,
plaintiff's vice president contacted defendant Laura Knight-Jadczyk and asked her to
"immediately remove any thread, story or article, regardless of content, mentioning Eric Pepin or

4 -- OPINION AND ORDER

Higher Balance Institute" and "actively moderate to remove any mention of Eric Pepin [or] Higher Balance Institute in the future," but Knight-Jadczyk refused and instead posted the vice president's requests on the Internet. Op. and Order [64] at 3 (citations omitted). This lawsuit was not filed until February 25, 2008. *Id*. A measure of willfulness is attributable to Knight-Jadczyk, and the first factor under ORS 20.075(1) militates slightly in favor of a reduced fee award.

The claims and defenses advanced were reasonable in this case. The deterrence factors identified in ORS 20.075(1)(c) and (d) are more difficult to weigh. The *Gardner* court opined that these factors "are of minimal importance in analyzing a fee request made under ORS 31.152(3)," but that large awards might deter meritorious claims:

> The court must evaluate the relative balance between deterring meritless claims on the one hand and preserving the right to pursue meritorious claims on the other. While a fee award of some amount may be warranted in a particular case, one that goes too far will invariably deter not only claims without merit, but claims with merit as well, simply because the risk that some court, somewhere, might disagree with the claimant and conclude that the claim lacks merit, is too great given that the plaintiff could be subject to complete financial ruin as a result of filing the claim. Defendants' combined total request of $149,517 is unreasonable because it tips that balance much too far against putative plaintiffs with meritorious claims and it could result in encouraging tortious behavior by those with far greater financial resources.

*Gardner*, 2006 WL 2711777, at *4-*5 (citing *Card v. Pipes*, No. CV-03-6327-HO, 2004 WL 1403007, at *4 (D. Or. June 22, 2004), which held that while a large award may discourage others from filing meritorious claims, and a small award may encourage meritless claims, an award of $58,712.90 for 268.6 hours spent on an anti-SLAPP motion directed at a three-claim complaint was unreasonable).

Here, the amount sought, over $135,000, like the $58,712.90 sought in *Pipes*, and the $149,517 sought in *Gardner*, appears unreasonably high. This court agrees with the reasoning presented in *Northon* that litigating a case "only as far as a special motion to strike," which must

be filed within sixty days of serving the complaint and is "essentially the first thing the defendant does in the case," should not result in an "extraordinary" fee request because "some litigants with meritorious claims would be deterred from bringing suit knowing they risk such a monumental fee award should they lose at the first stage of their case." *Northon*, 494 F. Supp. 2d at 1185 (citations omitted). The reasonableness factor weighs in favor of reducing the requested award.

The parties' postures in pursuing settlement of the dispute appear mostly reasonable. Counsel for defendant assert that they urged plaintiff to drop the case but that plaintiff refused to do so. (First) Decl. of Stephen Kaus in Supp. of Dfts' Mot. for Att'y Fees and Costs (First Kaus Decl.) at 2. Subsequent settlement negotiations stalled after the issue of defendants' fee reimbursement arose. *Id*. at 4. Because Knight-Jadczyk not only refused plaintiff's pre-litigation resolution overture, but posted plaintiff's communications on the Internet, consideration of this factor results in favoring neither party.

The other factors under ORS 20.075(1) do not appear to affect the determination of reasonableness in the case. Similarly, only a few factors under ORS 20.075(2) require extensive analysis. The parties' greatest dispute focuses upon factor (a), the time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services. This factor is addressed below.

Additionally, defense counsel assert that their decision to cut their regular fee rates in half brought the rates applied in this case "well within the range of the average hourly rate charged for similar work by attorneys in the Portland area." Mem. in Supp. at 14. This court agrees in part. Plaintiff raises no substantive challenge against the rates charged, but plaintiff's objections to the number of hours claimed, especially by Kaus, who claimed the second highest applicable fee rate, are well-taken.

6 -- OPINION AND ORDER

Defense counsel also argue that because plaintiff sought over $1 million in damages, the requested award is justifiable.  The court agrees that factor (d), referring to the amount involved in the controversy and the results obtained, militates in favor of upholding a significant award.

The remaining factors do not appear to significantly favor either party.  The court acknowledges that counsel for both parties are highly respected, and that the fees charged by defense counsel were not fixed or contingent, but were calculated from significantly reduced hourly rates that were "actually paid" by defendants.  Mem. in Supp. at 16.

The crux of the dispute over the fee award is whether the hours requested, at the rates requested, were reasonably required in the case, given the degree of "novelty and difficulty of the questions involved" and the skills needed to properly perform the legal services.  Plaintiff makes no substantive challenge as to the rates charged, but objects to reasonableness of the hours claimed by defense counsel.[2]

Defendants refer to difficulties encountered because plaintiff's Complaint "failed to attach or otherwise identify the posts on which it was based," compelling defense counsel to "review nearly 300 posts in an attempt to identify the source and context of the allegedly defamatory statements" and because counsel had to "investigate the nature of [their own clients, the named defendants] and the relationship between them."  Mem. in Supp. at 11.

The court is unpersuaded that the burdens of identifying objectionable postings at their clients' website and investigating their clients' relationships were particularly novel or onerous.  Similarly, the contention that defense counsel had to apply an independent, "three-part analysis

---

2.    The parties differ on the hours claimed that are attributable directly to prosecuting the anti-SLAPP motion.  Plaintiff calculated that 190 hours were claimed, while defense counsel assert that the correct total is 222 hours.  Plaintiff also calculated that 62 hours were being claimed for work on the jurisdictional motion.  That total is not disputed by defense counsel.

to each of the eight posts in question" and were compelled to undertake a detailed analysis of the law regarding public figures and actual malice is unavailing.  As noted in *Gardner*, although "an anti-SLAPP motion to strike does require some evidentiary investigation and presentation," it is the plaintiff responding to the motion "who has the laboring oar."  *Gardner*, 2006 WL 2711777, at *8.  "A defendant's burden is simply to make a prima facie showing that the claims to which the motion are directed arise out of one of the categories of civil actions described in O.R.S. 31.150(2)."  *Id*.

    There is no dispute that defense counsel expertly advanced relevant "multiple defenses" and reasonably incurred some additional expense in battling plaintiff over access to relevant prosecution records.  Mem. in Supp. at 12-13.  Plaintiff's argument that the fee award must be limited to the work performed in preparation for the anti-SLAPP motions to strike is rejected.  *See Schumacher v. City of Portland*, CV-07-601-MO, 2008 WL 219603, *4 (D. Or. January 23, 2008) (holding that such arguments are wrong and do not merit further discussion).  Defendants are entitled to recover compensation for overcoming the complexities arising in such cases, as well as issues arising from the nature of a Complaint that names multiple, inter-related defendants and asserts claims "undergirded" with First Amendment issues.  *Id*. at *9 (such issues present defense counsel "with a sizable ball of yarn to unravel" and can entitle counsel to substantial fee awards).

    Accordingly, the 85 hours claimed for obtaining the prosecution records referenced above over the objections of plaintiff have been scrutinized and are reasonable.  Of the remaining hours claimed for work not directly related to the anti-SLAPP motion, plaintiff's only explicit challenge is to the 62 hours claimed for the jurisdictional motion.  While defendants are entitled to recover for this work, the court agrees that the number of hours claimed for it, and the rate applied to those hours, are excessive.

Lead counsel Stephen Kaus acknowledges that his firm "does not have a limitless cadre of fungible associates to throw at a case," and that although he is a partner at his firm, he "undertook to research and draft the jurisdiction motion." Second Kaus Decl. at 3. He explains that he "consulted various treatises and located a wealth of material," and expended "the better part of a week, including the weekend, reading jurisdiction cases before I started to draft the motion." *Id*. at 3-4. Kaus is a graduate of Boalt Hall at the University of California, Berkeley, has practiced law for more than thirty-five years, and has served as counsel in "numerous complex matters." First Kaus Decl. at 6. The time he billed for the jurisdictional motion, and the rate he billed for that work, is excessive. The court has examined the motion and the research involved with it. The work warranted ten hours at a reasonable rate of $175 per hour. Accordingly, 62 hours at $237.50 per hour, or $14, 725.00, is subtracted from the total award request, and $1,750 (10 hours at $175 per hour) is added to the resulting total.

Moreover, this court finds that the nearly 67 hours claimed for researching the anti-SLAPP motion, and the nearly 125 hours claimed for drafting that motion, are also excessive. Defense counsel's argument that these calculations – which are summaries presented by plaintiff – are actually erroneous and omit at least 32 hours "spent researching defamation and Internet responsibility issues" is confusing but, in short, does not offer compelling support for the defense. Reply at 5; Second Kaus Decl. at 2-3. Similarly, counsel's claim that time-consuming (but virtually identical) "special joinders" on behalf of the co-defendants were required, as well as a Reply brief and research "to make sure no additional briefing was warranted," is unpersuasive. Reply at 6.

As counsel acknowledges, the defense team had significant expertise in the fields of law at issue. As noted above, this expertise is reflected in the rates charged, notwithstanding the discounts counsel provided defendants. Although such expertise warrants higher billable rates,

that same expertise should result in a reduction in the number of hours required to prepare a

motion to strike:

> Counsel certainly has sufficient experience warranting the higher specialty rate,
> but this experience also dictates counsel will act more efficiently.  Counsel cannot
> have it both ways. He cannot seek the higher rate and then bill a number of hours
> that far exceeds that which would be expected from someone entitled to such rate.

*Northon*, 494 F. Supp. 2d at 1187 n.5.

The three senior counsel, billing over fifty dollars per hour more than the other defense

attorneys, claimed over 345 hours (or approximately 53 percent) of the work billed.  Second

Kaus Decl. at 5.  Although counsel has offered to prepare additional charts "using certain

categories" to assist in the court's further analysis, this court concludes that further briefing

would only serve primarily to further inflate the fees being sought.  *Id.*

Instead, the court is guided by the following reasoning in the *Northon* court.  As in that

case, the billing records presented provide "no principled way to identify and separate out the

time reasonably expended from that which was unreasonable." *Northon*, 494 F. Supp. 2d at

1188.  Rather, counsel for both parties agree that between 190 and 222 hours were claimed for

researching the anti-SLAPP motion, including nearly 125 hours drafting it.  As was done in

*Northon*, this court has examined the work performed and has derived an appropriate fraction of

the amount claimed (adjusted for, and based in part on, the inflated jurisdictional motion work)

for purposes of calculating the award.  *Id.* at 1189.

The total requested is $135,558.00, for a total of 698.1 hours billed.  Second Kaus Decl.

at 5.  The adjustment for the jurisdictional motion work is a net reduction of 52 hours, and a net

reduction in the bill of $12,975.  Totals after this adjustment are $122,583 for 646.1 hours.

For the reasons provided, the court concludes that a similar reduction in defendants'

inflated fee request for preparing the anti-SLAPP motion is warranted.  Defense counsel assert

that such work accounted for 222 hours. The court reduces those claimed hours to 40, a reduction that is somewhat similar in proportion to the correction rendered in the hours claimed for the jurisdictional motion. Because the senior counsel's expertise should be reflected in some of these hours, this work should be billed at an average of $195 per hour, for a total of $7,800.

After that reduction, there are remaining a subtotal of 464.1 hours claimed, which include 85 hours incurred when litigating access to an expunged criminal trial record, and 10 hours for a jurisdictional motion. This subtotal is further reduced in a proportion similar to the other reductions, to a net total of 250 hours, billable at the rate of $175 per hour, for a total of $43,750. The final calculation for the total fee award, $51,550.00, is deemed reasonable and appropriate for the work performed and the expertise demonstrated.

The court is unable to ascertain whether defendants incorporated a cost bill within the fee award sought and litigated herein. Rather than further delay the resolution of this matter, defense counsel are ordered to prepare a proposed final Judgment for this court's approval, and identify the appropriate award of costs within that proposal.

## **CONCLUSION**

For the reasons provided, defendants' Motion for Attorney Fees [67] is granted in part. Defendants are entitled to $51,500.00 as a fee award. Counsel for defendants are ordered to file a proposed Judgment reflecting this award, and specifying the amount being claimed as costs (with appropriate supporting documentation), if costs were intended to be exclusive of the litigated fee award. This proposed Judgment must be filed by July 10, 2009. Any objections to the proposed Judgment by plaintiff HBI must be filed by July 24, 2009. The court will issue a final Judgment in this matter after that date.

IT IS SO ORDERED.

Dated this   18   day of June, 2009.

11 -- OPINION AND ORDER

_/s/ Ancer L. Haggerty_
Ancer L. Haggerty
United States District Judge